Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar No. 24060067
Amber M. Carson
Texas Bar No. 24075610
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:     (214) 954-4135
Facsimile:      (214) 953-1332
Email:           jbrookner@grayreed.com
                     akaufman@grayreed.com
                     acarson@grayreed.com

**PROPOSED COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| FRESH ACQUISITIONS, LLC, *et al.*,[1] | § § § | Case No. 21-30721 (SGJ) |
| Debtors. | § | (Joint Administration Requested) |

## DEBTORS' EMERGENCY MOTION
## FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO
## PAY CERTAIN PREPETITION CLAIMS OF (A) 503(b)(9) CLAIMANTS AND
## (B) PACA/PASA CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE
## PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Alamo Fresh Payroll, LLC (1590); Fresh Acquisitions, LLC (2795); Alamo Ovation, LLC (9002); Buffets LLC (2294); Hometown Buffet, Inc. (3002); Tahoe Joe's Inc. (7129); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); Food Management Partners, Inc. (7374); FMP SA Management Group, LLC (3031); FMP-Fresh Payroll, LLC (8962); FMP-Ovation Payroll, LLC (1728); and Alamo Buffets Payroll, LLC (0998). The Debtors' principal offices are located at 2338 N. Loop 1604 W., Suite 350, San Antonio TX, 78248, United States.

## Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business certain prepetition claims held by (i) 503(b)(9) Claimants (as defined below) in an aggregate amount up to $150,000 and (ii) PACA/PASA Claimants (as defined below) in an aggregate amount up to $55,000; (b) confirming the administrative expense priority status of Outstanding Orders (as defined below) and authorizing payment of such obligations in the ordinary course of business; and (c) granting related relief.

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 105(a), 363, 503, 1107(a) and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Rule 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules").

## Background

5.     Prior to the COVID-19 pandemic, the Debtors were a significant operator of buffet-style restaurants in the United States with approximately 90 stores operating in 27 states.  The Debtors' concepts include six buffet restaurant chains and a full service steakhouse, operating under the names Furr's Fresh Buffet®, Old Country Buffet®, Country Buffet®, HomeTown® Buffet, Ryan's®, Fire Mountain®, and Tahoe Joe's Famous Steakhouse®, respectively.  Much like its competitors in the all-you-can-eat (AYCE) and dine-in restaurant

businesses, the Debtors' recent history has been impacted by the uncertainty, unexpected challenges, and ever changing landscape resulting from the COVID 19 pandemic. A more detailed history of the Debtors' operations are discussed in the *Declaration of Mark Shapiro, Chief Restructuring Officer, in Support of Chapter 11 Petition and First Day Motion* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith and incorporated herein.[2]

6.      On April 20, 2021 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no official committees have been appointed.

**Trade Claims Overview**

7.      As of the Petition Date, the Debtors estimate they owe approximately $3.6 million on account of all accounts payable to their unsecured creditors. By this motion, the Debtors are seeking authority to pay an amount necessary to preserve the value of their estates, which shall not exceed $205,000, on account of prepetition claims held by (a) vendors whose claims may be entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (b) vendors whose claims are covered by PACA or PASA (as defined herein) who therefore may be entitled to priority.

8.      The Debtors request authorization to pay a limited number of Trade Claims (as defined herein), subject to the limitations set forth in the Order. The following table summarizes the types of claimants that the Debtors request authority to pay pursuant to this motion (together, the "<u>Trade Claimants</u>" and each of the below claims a "<u>Trade Claim</u>"):

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the First Day Declaration.

4824-4566-2949

| Category of Claim | Description of Potential Claimant | Approx. Amount Outstanding as of the Petition Date |
|---|---|---|
| 503(b)(9) Claims | 503(b)(9) Claimants: Suppliers of goods that may be entitled to statutory priority under section 503(b)(9) of the Bankruptcy Code. | $150,000 |
| PACA/PASA Claims | PACA/PASA Claimants: Suppliers of goods covered by PACA or PASA and thus may be entitled to priority | $55,000 |
| Total Amount of Claims | | $205,000 |

## I.  503(b)(9) Claimants.

9.  The Debtors have received certain goods or materials from various vendors within the 20 days before the Petition Date that were sold to the Debtors in the ordinary course of business (collectively, the "503(b)(9) Claimants" and the claims held by the 503(b)(9) Claimants, the "503(b)(9) Claims"). Some of the 503(b)(9) Claimants supply goods to the Debtors that are especially crucial to the Debtors' ongoing daily operations, including foodstuffs necessary for the daily operation of the Debtors' restaurants. The need for these products cannot be overstated—without the regular flow of these goods, the Debtors' only revenue source will effectively starve.

10.  In addition, the Debtors' relationships with the 503(b)(9) Claimants are not governed by enforceable long-term contracts in some cases. Rather, in such cases, the Debtors often obtain supplies on an order-by-order basis. As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its prepetition claims. The Debtors believe certain 503(b)(9) Claimants could reduce the Debtors' existing trade credit—or demand payment in cash on delivery—which will negatively affect the Debtors' already limited liquidity.

11.  The Debtors believe that as of the Petition Date, they owe approximately $150,000 on account of prepetition 503(b)(9) Claims, all of which will come due within the first 21 days of these chapter 11 cases. The Debtors do not seek to accelerate or modify existing

4

payment terms with respect to the 503(b)(9) Claims. The Debtors simply seek to pay the 503(b)(9) Claims prior to the effective date of a plan in these chapter 11 cases to induce vendors to continue providing services necessary for effectuating an orderly restructuring. Accordingly, the Debtors request the authority, but not the direction, to pay the 503(b)(9) Claims during the pendency of these chapter 11 cases.

## II. PACA/PASA Claimants.

12. Certain of the goods delivered to the Debtors may qualify as "perishable agricultural commodit[ies]" under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et seq. ("PACA"). PACA's definition of "perishable agricultural commodity" generally includes "fresh fruits and fresh vegetables of every kind and character." 7 U.S.C § 499a(b)(4). Under PACA, eligible produce suppliers and their agents (the "PACA Claimants,") are the beneficiaries of a statutory trust (the "PACA Trust") in all of the buyer's perishable agricultural commodity inventory or other derivatives of perishable agricultural commodities, the products derived therefrom, and the proceeds related to any sale of the commodities or products (collectively, the "PACA Trust Assets"). *See* 7 U.S.C § 499a(b)(4). PACA Trust Assets are preserved as a non-segregated floating trust and may be commingled with non-trust assets. PACA Claimants may be able to assert claims that are entitled to payment ahead of other creditors.

13. Similarly, certain of the Debtors' suppliers (the "PASA Claimants" and, together with the PACA Claimants, the "PACA/PASA Claimants") may be eligible to assert claims under the Packers and Stockyards Act of 1921 as amended, 7 U.S.C. § 181 et seq. ("PASA"), which prescribes the conditions of operations for businesses dealing in livestock and poultry. PASA creates a statutory trust (the "PASA Trust" and, together with the PACA Trust, the "Statutory Trusts") scheme which is virtually identical to PACA in respect of delivery of

livestock, meat products and related products, products derived therefrom and the proceeds related to the sale of such commodities or products (collectively, the "PASA Trust Assets" and, together with the PACA Trust Assets, the "Trust Assets"). *See In re W.L. Bradley Co.*, 75 B.R. 505, 509 (Bankr. E.D. Pa. 1987) ("The Legislative history expressly notes that the [PACA Trust] was modeled on the trust amendment to the Packers and Stockyards Act.").

14. Furthermore, certain of the PACA or PASA claims may relate to transactions where goods were received by the Debtors in the 20-day period prior to the Petition Date, and therefore, may also entitled to administrative priority for the value of those goods under section 503(b)(9) of the Bankruptcy Code. To the extent such "crossover" claims are validly asserted, they will be treated as PACA or PASA claims and entitled to Trust Assets.

15. The Debtors estimate that as of the Petition Date, the PACA/PASA Claimants may be able to assert PACA or PASA claims in an amount up to $50,000 (the "PACA/PASA Claims"), all of which will come due within the first 21 days of these chapter 11 cases. Accordingly, the Debtors request the authority, but not the direction, to pay the PACA/PASA Claims during the pendency of these chapter 11 cases.

### III. Payment of Outstanding Orders.

16. Prior to the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (collectively, the "Outstanding Orders"). To avoid becoming general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition. The Debtors estimate that the Outstanding Orders all constitute 503(b)(9) Claims or PACA/PASA Claims. To prevent any disruption to the Debtors' business operations, and given that goods will be delivered postpetition, the Debtors request that

4824-4566-2949

the Court confirm the administrative expense priority status of claims related to the Outstanding Orders under section 503(b) of the Bankruptcy Code and authorize the Debtors to pay those claims in the ordinary course of business.

### Basis for Relief

I.     **The Court Should Authorize the Payment of the Trade Claims.**

17.     Courts have recognized that it is appropriate to authorize the payment of certain prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In doing so, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

18.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty . . . to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

19.     Moreover, under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the

4824-4566-2949

Bankruptcy Code." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business); *In re CoServ, L.L.C.*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor in possession to pay prepetition claims).

20. No provision of the Bankruptcy Code expressly prohibits the postpetition payment of prepetition trade claims. The above-referenced sections of the Bankruptcy Code authorize such payments when they are critical to preserving the going-concern value of the debtor's estate, as is the case here. Allowing the Debtors to pay the Trade Claims is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving the going concern value for the Debtors' business and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999); *In re CoServ, L.L.C.*, 273 B.R. at 497 (noting that "it is only logical that the bankruptcy court be able to use section 105(a) of the [Bankruptcy] Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate").

21. The Debtors require a steady stream of goods and services from the Trade Claimants to maintain operational viability. Without the goods and services provided by the Trade Claimants, the Debtors could be forced to halt operations immediately while they search for substitute vendors and service providers and may have to forego existing favorable trade terms in their haste. Importantly, any disruption to the Debtors' supply chain could result in a significant loss of operational efficiency, decreasing the value of their business, which could

impair stakeholder value at the outset of these chapter 11 cases. The Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the Trade Claims as set forth herein.

**II.     The Court Should Authorize the Payment of 503(b)(9) Claims.**

22.     Section 503(b)(9) provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 503(b)(9) Claims must be paid in full for the Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Therefore, payment of these claims now does not enhance the rights of these claimants; it merely provides them with what they would ultimately receive under a plan.

23.     The timing of such payments also lies squarely within the Court's discretion. *See In re Global Home Prods., LLC*, No. 06-10340, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court"). The Debtors' ongoing ability to obtain inventory and other goods as provided herein is key to their survival and necessary to preserve the value of their estates. Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases— which merely accelerates the timing of payment and not the ultimate treatment of such claims— the Debtors could be denied access to the inventory and other goods necessary to maintain the Debtors' business operations and maximize the value of the Debtors' estates.

**III.    The Court Should Authorize the Payment of the PACA/PASA Claims.**

24.     Assets governed by PACA or PASA, such as the Trust Assets, do not constitute property of the Debtors' estates. *See In re Delta Produce, L.P.*, 845 F.3d 609, 613 (5th Cir. 2016) (finding that "[PACA] trust assets are . . . insulated from the buyer's bankruptcy estate" under section 541(d) of the Bankruptcy Code); *Hous. Avocado Co. v. Monterey House, Inc. (In*

9

*re Monterey House, Inc.)*, 71 B.R. 244, 247 (Bankr. S.D. Tex. 1986) ("if a buyer or receiver declares bankruptcy . . . trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid") (internal quotations omitted); *In re Fresh Approach, Inc.*, 51 B.R. 412, 420 (Bankr. N.D. Tex. 1985) ("[t]his express exclusion of trust assets from property of the estate indicates that Congress intended a priority scheme consistent with that applied in cases of judicially imposed constructive trusts, i.e., that assets subject to the PSA (and by analogy, the PACA) trust were not property of the estate").

25.     As a result, the distribution of assets to the PACA/PASA Claimants falls outside the priority scheme of the Bankruptcy Code, and the PACA/PASA Claimants holding PACA/PASA Claims are entitled to payment from the Statutory Trust ahead of the Debtors' other creditors. *See, e.g.*, *Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 350 (5th Cir. 2000) ("[u]nder the Act, when a seller, dealer, or supplier ships produce to a buyer, a statutory trust is created upon acceptance of the commodities . . . the produce supplier obtains a priority interest in the trust assets held by the debtor") (internal quotations omitted); *Bocchi Americas Assocs. Inc v. Com. Fresh Mktg. Inc.*, 515 F.3d 383, 388 (5th Cir. 2008) (citing *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003)) (("[i]f the seller is not paid promptly, the buyer must preserve trust assets, and the seller has a 'superpriority' right that trumps the rights of the buyer's other secured and unsecured creditors").

26.     The requested relief does not prejudice the Debtors' creditors.  In fact, payments made to PACA/PASA Claimants on account of PACA/PASA Claims is consistent with the intent of PACA and PASA and, moreover, will inure to the benefit of the Debtors and all parties in interest by (a) facilitating the continued purchase and receipt of fresh produce and other products and (b) avoiding potential disruption to the Debtors' business operations.

27.     Notably, in certain circumstances, shareholders, officers, or directors of a corporate entity who are in a position to control trust assets but breach the fiduciary duty to preserve those assets may be held personally liable under PACA or PASA, as applicable. *Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) ("[W]e join our colleagues in the Ninth Circuit and hold that individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA") (referencing *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997)); *see also Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316, 318–19 (5th Cir. 2020). Thus, to the extent that any valid obligations arising under PACA or PASA remain unsatisfied by the Debtors, the Debtors' officers and directors or members may be subject to lawsuits during the pendency of these chapter 11 cases. Any such lawsuit (and the ensuing potential liability) would distract the Debtors and their officers and directors from administering the Debtors' estates and, moreover, could lead to the assertion of substantial indemnification claims under the Debtors' governing documents, employment agreements, and applicable laws.

28.     Finally, payment of PACA/PASA Claims will inure to the benefit of the Debtors' estates by preserving goodwill between the Debtors and certain of the vendors of fresh produce, meat, and poultry products. Without the relief requested herein, the Debtors could be subject to numerous claims, adversary proceedings, and motions, including motions by PACA/PASA Claimants for relief from the automatic stay and/or complaints for injunctive relief, which would result in the unnecessary expenditure of time, effort, and money by the Debtors.

29.     Courts in this district and others have granted similar relief to that requested in this Motion. *See, e.g.*, *In re CiCi's Holdings, Inc.*, No. 21-30146 (SGJ) (Bankr. N.D. Tex. Feb.

18, 2021) (authorizing debtors to make payments on behalf of PACA and 503(b)(9) claims); *In re Taco Bueno Rest., Inc.*, No. 18-33678 (SGJ) (Bankr. N.D. Tex. Nov. 30, 2018) (same); *In re Buffet Partners, L.P.*, No. 14-30699 (HDH) (Bankr. N.D. Tex. Feb. 10, 2014) (authorizing debtors to make payments on behalf of PACA claims); *In re Rubio's Rest., Inc.*, No. 20-12688 (MFW) (Bankr. D. Del. Nov. 11, 2020) (same); *In re California Pizza Kitchen, Inc.*, No. 20-33752 (MI) (Bankr. S.D. Tex. Sept. 17, 2020) (same); *In re Ignite Restaurant Group, Inc.*, No. 17-33550 (DRJ) (Bankr. S.D. Tex. June 7, 2017) (same).[3]

**IV.    The Court Should Confirm that Outstanding Orders Are Administrative Expense Claims and Authorize Payment on Account Thereof.**

30.    Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are administrative expense claims because they benefit the estate postpetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority). Therefore, should the Court authorize payment of the Outstanding Orders, it would not be affording these claims any greater priority than they already have or prejudicing other parties in interest. In addition, because suppliers could simply obtain payment of their claims by requiring the Debtors to reissue their Outstanding Orders postpetition, the relief requested herein simply saves time, delay, administrative burden, and disruption to the Debtors' businesses at the outset of these chapter 11 cases.

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

4824-4566-2949

31.     Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

**V.     Processing of Checks and Electronic Fund Transfers Should Be Authorized.**

32.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the Trade Claims.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

**The Debtors Satisfy the Requirements of Bankruptcy Rule 6003**

33.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, an immediate and orderly transition into chapter 11 is critical to the ability of the Debtors to maximize the value of their estates, and this emergency Motion is necessary to prevent unnecessary delay in these chapter 11 cases.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations and efforts at this critical juncture.  Accordingly, the Debtors submit they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

13

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

34.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h)

**Reservation of Rights**

35.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the requested relief, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

4824-4566-2949

**Notice**

36.      The Debtors will provide notice of this motion to the following parties or their counsel: (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to Arizona Bank & Trust; (d) counsel to the proposed DIP Lender; (e) the United States Attorney's Office for the Northern District of Texas; (f) the Internal Revenue Service; (g) the state attorneys general for states in which the Debtors conduct business; (h) the Trade Claimants; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

**No Prior Request**

37.      No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 20th day of April, 2021.

**GRAY REED**

By:  */s/ Jason S. Brookner*
　　　Jason S. Brookner
　　　Texas Bar No. 24033684
　　　Aaron M. Kaufman
　　　Texas Bar No. 24060067
　　　Amber M. Carson
　　　Texas Bar No. 24075610
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:　(214) 954-4135
Facsimile:　(214) 953-1332
Email:　　　jbrookner@grayreed.com
　　　　　　akaufman@grayreed.com
　　　　　　acarson@grayreed.com

**PROPOSED COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION**

**CERTIFICATE OF SERVICE**

I certify that on April 20, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Jason S. Brookner*
Jason S. Brookner

16

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FRESH ACQUISITIONS, LLC, *et al.*,[1] | § | Case No. 21-30721 (SGJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |
| | § | **Re: Docket No. _** |

**ORDER (I) AUTHORIZING THE DEBTORS TO PAY
CERTAIN PREPETITION CLAIMS OF (A) 503(b)(9) CLAIMANTS AND
(B) PACA/PASA CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE
PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an order (this "Order") (a) authorizing the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Alamo Fresh Payroll, LLC (1590); Fresh Acquisitions, LLC (2795); Alamo Ovation, LLC (9002); Buffets LLC (2294); Hometown Buffet, Inc. (3002); Tahoe Joe's Inc. (7129); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); Food Management Partners, Inc. (7374); FMP SA Management Group, LLC (3031); FMP-Fresh Payroll, LLC (8962); FMP-Ovation Payroll, LLC (1728); and Alamo Buffets Payroll, LLC (0998). The Debtors' principal offices are located at 2338 N. Loop 1604 W., Suite 350, San Antonio TX, 78248, United States.

[2] Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

Debtors to pay in the ordinary course of business certain prepetition claims held by (i) 503(b)(9) Claimants and (ii) PACA/PASA Claimants, (b) confirming the administrative expense priority status of Outstanding Orders, and (c) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein.

2.     The Debtors are authorized, but not directed, to honor, pay or otherwise satisfy the prepetition Trade Claims in the ordinary course of business and consistent with their prepetition practices in an aggregate amount not to exceed $205,000, in the categories and amounts as set forth in the Motion and as the Debtors deem necessary.

3.     The Debtors are authorized, but not directed, to pay all undisputed amounts related to the Outstanding Orders in the ordinary course of business and consistent with the

4824-4566-2949

parties' customary practices in effect prior to the Petition Date and as the Debtors deem necessary.

4.    In the event the Debtors exceed the aggregate amounts in any category as detailed in the Motion, the Debtors shall file a notice with the Court describing the category and overage amount.

5.    All undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

6.    Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the Approved Budget, the Court's *Interim Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, and any final order entered by the Court in connection therewith.

7.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion or a finding that any particular claim is an administrative expense claim or other

3

priority claim; (e) a request or authorization to assume, adopt, or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

9.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11. The requirements of Bankruptcy Rule 6003(b) for emergency relief are satisfied.

4

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

14.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #

Submitted by:

Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar No. 24060067
Amber M. Carson
Texas Bar No. 24075610
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:      (214) 954-4135
Facsimile:      (214) 953-1332
Email:          jbrookner@grayreed.com
                akaufman@grayreed.com
                acarson@grayreed.com

**PROPOSED COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION**

4824-4566-2949