Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar. No. 24060067
Amber M. Carson
Texas Bar No. 24075610
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:    (214) 954-4135
Facsimile:    (214) 953-1332
Email:        jbrookner@grayreed.com
             akaufman@grayreed.com
             acarson@grayreed.com

**PROPOSED COUNSEL FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FRESH ACQUISITIONS, LLC, *et al.*,[1] | § | Case No. 21-30721 (SGJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF
## AN ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE
## TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND PERFORM
## INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Alamo Fresh Payroll, LLC (1590); Fresh Acquisitions, LLC (2795); Alamo Ovation, LLC (9002); Buffets LLC (2294); Hometown Buffet, Inc. (3002); Tahoe Joe's Inc. (7129); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); Food Management Partners, Inc. (7374); FMP SA Management Group, LLC (3031); FMP-Fresh Payroll, LLC (8962); FMP-Ovation Payroll, LLC (1728); and Alamo Buffets Payroll, LLC (0998). The Debtors' principal offices are located at 2338 N. Loop 1604 W., Suite 350, San Antonio TX, 78248, United States.

## Relief Requested

1. The Debtors seek entry of an order, substantially in the forms attached hereto as **Exhibit B** (the "Interim Order") and **Exhibit C** (the "Final Order"): (a) authorizing the Debtors to, in the ordinary course of their businesses, (i) continue to operate their Cash Management System, Bank Accounts, and Business Forms and (ii) continue to perform intercompany transactions consistent with historical practice; (b) authorizing the Cash Management Banks to (i) maintain, service, and administer the Bank Accounts[2] and (ii) honor and process all related checks and electronic payment requests consistent with the relief requested herein; and (c) waiving or extending the Debtors' time for compliance with 11 U.S.C. § 345(b) and the related requirements of the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") to the extent that such requirements are inconsistent with (i) the Debtors' existing practices under their Cash Management System or (ii) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in these chapter 11 cases; and (d) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3. Venue is pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105, 345, 363, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003

---

[2] The Debtors believe that Exhibit A sets forth a complete list of Bank Accounts. Nevertheless, the Debtors request that the Order granting the relief sought herein apply to all bank accounts that are actually a part of or are linked to the Cash Management System. Thus, to the extent any Bank Account has been inadvertently omitted from the list, the Debtors request that the Order granting the relief sought herein include all of the Debtors' accounts.

4828-8653-6413

and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules").

### Background

5. Prior to the COVID-19 pandemic, the Debtors were a significant operator of buffet-style restaurants in the United States with approximately 90 stores operating in 27 states. The Debtors' concepts include six buffet restaurant chains and a full service steakhouse, operating under the names Furr's Fresh Buffet®, Old Country Buffet®, Country Buffet®, HomeTown® Buffet, Ryan's®, Fire Mountain®, and Tahoe Joe's Famous Steakhouse®, respectively. Much like its competitors in the all-you-can-eat (AYCE) and dine-in restaurant businesses, the Debtors' recent history has been impacted by the uncertainty, unexpected challenges, and ever changing landscape resulting from the COVID 19 pandemic. A more detailed history of the Debtors' operations are discussed in the *Declaration of Mark Shapiro, Chief Restructuring Officer, in Support of Chapter 11 Petition and First Day Motion* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein.[3]

6. On April 20, 2021 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed.

---

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the First Day Declaration.

4828-8653-6413

## I.  The Cash Management System

7.    In the ordinary course of business, the Debtors maintain an integrated, centralized cash management system (the "Cash Management System") comparable to the cash management systems used by similarly situated companies to manage the cash of operating units in a cost-effective, efficient manner.  The Cash Management System enables the Debtors to facilitate their cash forecasting and reporting, monitor the collection and disbursement of funds, and maintain control over the administration of their bank accounts.

8.    The Cash Management System includes a total of twenty-two (22) bank accounts (each a "Bank Account" and collectively, the "Bank Accounts"),[4] each of which is identified on **Exhibit A** attached hereto.  The Cash Management System is arranged to organize and monitor cash flows across the Debtors' enterprise and to centralize procurement for general administrative and operating expenses.

9.    Given the economic and operational scale of the Debtors' businesses, any disruption to the Cash Management System would have an immediate adverse effect on the Debtors' businesses and operations to the detriment of their estates and numerous stakeholders.  Accordingly, to minimize the disruption caused by these chapter 11 cases and to maximize the value of the Debtors' estates, the Debtors request authority, but not direction, to continue to utilize their existing Cash Management System during the pendency of these chapter 11 cases, subject to the terms described herein.

10.   As summarized in the chart below, the Debtors utilize several types of accounts to monitor and manage their receipts and disbursements.  In the ordinary course of business, the

---

[4] Eighteen (18) of the Bank Accounts are held at Arizona Bank & Trust, three (3) of the Bank Accounts are held at Bank of America, and the Debtors hold one bank account at Simmons Bank (collectively, the "Cash Management Banks").

Debtors routinely transfer money between the Bank Accounts via wire transfers and other electronic funds transfers. The number of intercompany transfers among the network of Bank Accounts can be in the hundreds on any given day because the cash is consolidated in silos by operating entity, and the applicable store earning the cash may be owned by a different Debtor subsidiary. Thus, there could be inflow with deposits and outflow with disbursements.

11.    The Bank Accounts are described in more detail below:[5]

| **Debtors: Buffets, LLC, Hometown Buffet, Inc., OCB Restaurant Company, LLC, OCB Purchasing Co., Ryan's Restaurant Group, Fire Mountain Restaurants, LLC, Alamo Buffets Payroll, LLC (collectively, the "Buffets Debtors")** | |
| --- | --- |
| **Bank Account** | **Bank Account Description** |
| Arizona Bank & Trust<br>Buffets LLC<br>Disbursement Account - 2560 | This disbursement account is funded from the Buffet Debtors' Concentration Account. Funds from this account are used to pay the Buffet Debtors' operating expenses and accounts payable. |
| Arizona Bank & Trust<br>Buffets LLC<br>Concentration Account - 2555 | Routinely, all depository accounts are swept to this account. Funds from this account are then manually disbursed to the Buffet Debtors' other accounts. |
| Arizona Bank & Trust<br>Alamo Buffets Payroll, LLC<br>Payroll Account - 9371[6] | Payroll and benefits funds are swept to the Alamo Buffets Payroll, LLC account from the Buffet Debtors' and Tahoe Joe's Concentration Accounts and administered through Paycor for disbursement to employees. |
| Arizona Bank & Trust<br>Buffets LLC<br>Elavon Merch Account - 2198 | The Elavon and merchant deposit accounts are funded by credit card payments at the Buffet Debtors' restaurants. Funds from these accounts are used to pay bank fees and are transferred to the Concentration Account. |
| Arizona Bank & Trust<br>Buffets LLC<br>Merchant Deposit Account - 2584 | |
| Arizona Bank & Trust<br>Buffets LLC<br>Utility Account - 3927 | This account was originally opened to automatically pay utility payments. The account is now used to receive deposits from third-party delivery services. |
| **Debtor: Tahoe Joe's, Inc.** | |
| **Bank Account** | **Bank Account Description** |
| Arizona Bank & Trust<br>Tahoe Joe's, Inc.<br>Concentration Account - 8972 | Routinely, all depository accounts are swept to this account. Funds from this account are then manually disbursed to Tahoe Joe's other accounts. |
| Bank of America<br>Tahoe Joe's, Inc.<br>Depository Account - 2970 | This depository account is used by Tahoe Joe's restaurants located near a Bank of America branch and is funded by cash payments from these restaurants. Funds from these accounts are used to pay bank fees and are swept to the Tahoe Joe's Concentration Account. |

---

[5] These descriptions of Bank Account types are for illustrative purposes only and are not exhaustive. A single Bank Account may fall into more than one of the categories described herein.

[6] This account is used by both the Buffets Debtors and Tahoe Joe's, Inc.

4828-8653-6413

| Arizona Bank & Trust<br>Tahoe Joe's, Inc.<br>Disbursement Account - 8986 | Money is manually transferred to the Disbursement Account from the Concentration Account for paying the Debtors' operating expenses and accounts payable. |
| Arizona Bank & Trust<br>Tahoe Joe's, Inc.<br>Payroll Account - 9371[7] | Payroll and benefits funds are swept to the Alamo Buffets Payroll, LLC account from the Buffet Debtors' and Tahoe Joe's Concentration Accounts and administered through Paycor for disbursement to employees, taxing authorities and benefit providers. |
| Arizona Bank & Trust<br>Tahoe Joe's, Inc.<br>PPP Account - 6118 | This account was originally opened to receive funds received under the Paycheck Protection Program. The account is now used as a holding account for payment of state sales tax, as necessary. |
| Arizona Bank & Trust<br>Tahoe Joe's, Inc.<br>Utility Account - 8991 | The utility account is funded by credit card payments, ACH utility payments, ACH fintech payments, payments to third-party delivery providers. Funds in this account are transferred to the Concentration Account. |

| **Debtors: Fresh Acquisitions, LLC , Alamo Fresh Payroll, LLC, and FMP SA Management Group, LLC (collectively, the "Fresh Debtors")** | |
|---|---|
| **Bank Account** | **Bank Account Description** |
| Arizona Bank & Trust<br>Fresh Acquisitions, LLC<br>Concentration Account - 7080 | Routinely, all depository accounts are swept to a single Concentration Account from which money is manually disbursed to Disbursement Accounts, Payroll Accounts, and other Accounts for use. |
| Arizona Bank & Trust<br>FMP SA Management Group, LLC<br>Concentration Account - 3056 | |
| Bank of America<br>FMP SA Management Group, LLC<br>Concentration Account - 5573 | |
| Bank of America<br>Fresh Acquisitions, LLC<br>Depository Account 7197 | These depository accounts are located near the Fresh restaurants and are funded by cash payments at restaurants. Funds from these accounts are used to pay bank fees and are swept to the Fresh Debtors' Concentration Account. |
| Simmons Bank<br>Fresh Acquisitions, LLC<br>Depository Account - 8441 | |
| Arizona Bank & Trust<br>Fresh Acquisitions, LLC<br>Disbursement Account - 7099 | This disbursement account is funded from the Fresh Debtors' Concentration Account. Funds from this account are used to pay the Fresh Debtors' operating expenses and accounts payable. |
| Arizona Bank & Trust<br>Fresh Acquisitions, LLC<br>Elavon Merch Account - 2184 | The Elavon and merchant deposit accounts are funded by credit card payments at the Fresh restaurants. Funds from these accounts are used to pay bank fees and are transferred to the Fresh Debtors' Concentration Account. |
| Arizona Bank & Trust<br>Fresh Acquisitions, LLC<br>Merchant Deposit Account - 7103 | |
| Arizona Bank & Trust<br>Alamo Fresh Payroll, LLC<br>Payroll Account - 9366 | Payroll and benefits funds are swept to the Payroll Account from the Fresh Debtors' Concentration Account and administered through Paycor for disbursement to employees, taxing authorities and benefit providers. |
| Arizona Bank & Trust<br>Alamo Fresh Payroll, LLC<br>PPP Account - 6142 | This account was originally opened to receive funds received under the Paycheck Protection Program. The account is now used as a holding account for payment of state sales tax, as necessary. |

---

[7] This account is used by both the Buffets Debtors and Tahoe Joe's, Inc.

4828-8653-6413

| Arizona Bank & Trust<br>Fresh Acquisitions, LLC<br>Utility Account - 3908 | This account was originally opened to automatically pay utility payments. The account is now used to receive deposits from third-party delivery services. Funds in this account are transferred to the Concentration Account. |
| --- | --- |

12.     As of the Petition Date, the Debtors have approximately $28,000 in cash in the Bank Accounts.  The Debtors estimate that their cash receipt collections  averaged approximately $1.5 million  per month in the three months  prior to the Petition Date.[8]  This amount, however, varies month-to-month.

13.     The Debtors pay fees incurred in connection with the Bank Accounts (the "Bank Fees") to the Cash Management Banks on a monthly basis.  The Bank Fees totaled approximately $32,000.00 in the twelve months prior to November 25, 2020.[9]  The Debtors do not believe that they owe any Bank Fees as of the Petition Date, but in the event such Bank Fees are owing, the Debtors seek authority, but not direction, to pay the prepetition Bank Fees and continue paying the Bank Fees in the ordinary course on a postpetition basis, consistent with historic practice.

## II.     Intercompany Transactions

14.     In the ordinary course of business, the Debtors maintain business relationships with each other (the "Intercompany Transactions") that have historically resulted in intercompany receivables and payables (collectively, the "Intercompany Claims").[10]  The Debtors settle Intercompany Transactions as journal-entry receivables and payables, from time to time, to reimburse certain Debtors for various expenditures associated with their businesses and/or fund

---

[8] Given the evolving nature of the pandemic, the Debtors include only the prior three month window as their restaurants have seen increased traffic over this period.

[9] The Debtors closed some bank accounts in the twelve months prior to filing these cases; accordingly, some of the Bank Fees reflected above are for accounts the Debtors no longer operate and will not be incurred in the future.

[10] For the avoidance of doubt, in this Motion the Debtors only seek to continue Intercompany Transactions solely between the Debtors. The Debtors regularly pay management fees to affiliated non-debtor entities, but will not continue to do so postpetition without specific authorization from the Court.

4828-8653-6413

the Bank Accounts in anticipation of such expenditures, as needed. The Intercompany Claims are set off to the extent applicable and any Intercompany Claims that are not set off have historically remained outstanding and have not been repaid.

15. Intercompany Transactions are made through account transfers to (a) reimburse certain Debtors for various expenditures associated with their business, (b) fund certain Debtors' accounts in anticipation of such expenditures, as needed, (c) transfer funds up to an operating account when such excess revenue is available, or (d) because certain Debtors employ all employees and manage payroll and benefits for each.[11] Also, revenues from cash and credit card sales at the Debtors' restaurants are deposited into the depository accounts and then transferred to the concentration accounts. Once the funds are in the concentration accounts, such funds are disbursed to pay the Debtors' operating obligations, and the Debtors make appropriate credits and debits within their accounting system to reflect these Intercompany Transactions.

16. The Intercompany Transactions are an essential component of the Debtors' operations and centralized Cash Management System. Any disruption of the Intercompany Transactions would severely disrupt the Debtors' operations and result in great harm to the Debtors' estates and their stakeholders. Accordingly, the Debtors seek authority to continue the Intercompany Transactions in the ordinary course of business on a postpetition basis, in a manner substantially consistent with the Debtors' past practice.[12]

---

[11] Details regarding the payroll and benefits of Debtors' Employees, as that term is defined therein, are set forth in the concurrently filed *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefit Programs, and (II) Granting Related Relief.*

[12] This motion provides an overview of the Debtors' typical Intercompany Transactions. The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions described in this motion. To the extent that there are any outstanding prepetition obligations related to Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority to honor such obligations.

III.    **Compliance with Section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines.**

17.    Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires debtors to obtain, from the entity with which the money is deposited, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31," unless the court "for cause" orders otherwise. 11 U.S.C § 345(a)–(b).

18.    Similarly, the U.S. Trustee's *Guidelines for Chapter 11 Cases* (the "U.S. Trustee Guidelines") generally require chapter 11 debtors to, among other things, (a) close all existing bank accounts and open new accounts; (b) obtain checks for all debtor in possession accounts that have the designation "debtor-in-possession," and the bankruptcy case number; and (c) maintain their bank accounts with a depository bank that agrees to comply with certain requirements of the Office of the United States Trustee for the Northern District of Texas. The Debtors seek a waiver or thirty-day extension of certain of these requirements in this Motion.

A.    **Continued Use of Existing Business Forms and Records**

19.    The Debtors seek a waiver of the requirement that they open a new set of books and records as of the Petition Date. Opening a new set of books and records would create unnecessary administrative burdens and hardship and would cause unnecessary expense, utilization of resources, and delay. The Debtors, in the ordinary course of their businesses, use many checks, invoices, stationary, and other business forms (collectively, the "Business Forms").

By virtue of the nature and scope of the businesses in which the Debtors are engaged and the numerous other parties with whom they deal, the Debtors need to use their existing Business Forms without alteration or change. Printing new business forms would take an undue amount of time and expense. Fulfillment of the requirement would likely delay the payment of postpetition claims and negatively affect operations and the value of the Debtors' estates. Accordingly, the Debtors request that the Court authorize them to continue using their existing Business Forms and to maintain their existing business records.

**B.**     <u>Continued Use of Bank Accounts and Cash Management System</u>

20.     The Debtors request authority to maintain their existing Bank Accounts and Cash Management System in accordance with their usual and customary practices to ensure minimal disruption to operations. In addition, the Debtors request authority to close any of the Bank Accounts or open new bank accounts if, in the exercise of their business judgment, the Debtors determine that such action is in the best interest of their estates.

21.     The Debtors are concerned about unnecessary delay and disruption to their business and personnel, including the risk that funds needed for the Debtors' operations would be delayed were they required to change the Cash Management System. The Debtors issue checks to vendors, service providers, employees and others in the ordinary course of their business and obtaining new accounts and checks will delay and disrupt the Debtors' ability to operate. The Debtors' Cash Management System constitutes an ordinary course, essential business practice providing significant benefits to the Debtors including, among other things, the ability to control funds and reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information.

4828-8653-6413

22. To the extent required by the U.S. Trustee, the Debtors will add the designation "Debtor in Possession" or "DIP" to any checks in its possession and instruct the Debtors' Cash Management Banks to add the designation to any current and future Bank Accounts.

C. **Continued Use of Certain Accounts at Banks Which are Not Authorized Depositories**

23. Arizona Bank & Trust and Simmons Bank (collectively, the "Unauthorized Banks") are not authorized depositories in the Northern District of Texas. It is unclear if the Unauthorized Banks will take steps necessary to become authorized under the U.S. Trustee's guidelines. Pursuant to Bankruptcy Code § 105, the Debtors request a waiver or a thirty (30) day extension of its obligations under the U.S. Trustee Guidelines to maintain the Bank Accounts at the Unauthorized Banks while the Debtors work with the Unauthorized Banks and the U.S. Trustee.

24. Each of the Unauthorized Banks is insured by federal agencies, such as the Federal Deposit Insurance Corporation (the "FDIC"). Further, Arizona Bank & Trust, where most of the Bank Accounts are located, is one of the Debtors' prepetition secured lenders. The remaining Unauthorized Bank, Simmons Bank, is a regional bank, located near the Debtors' restaurants, enabling the Debtors' employees to easily make deposits and preventing disruption of the Debtors' current business operations.

25. Requiring the Debtors to change their deposits and other procedures would place a needless administrative burden on the Debtors, impose significant costs to the Debtors' estates, and could result in disruption to the Cash Management System. Conversely, the Debtors' estates and creditors will not be harmed by the maintenance of the status quo because of the safe and prudent practices utilized by the Debtors. Deposits in the Depository Accounts, for instance, are regularly swept to each concentration account.

4828-8653-6413

26.     In the interest of maintaining the continued and efficient operation of the Cash Management System during the pendency of these chapter 11 cases, the Debtors request that they be permitted to maintain and utilize all existing Bank Accounts on an interim basis while they attempt to bring the Unauthorized Banks into compliance as Authorized Depositories. The Debtors will work in good faith with the U.S. Trustee to resolve any concerns raised by the U.S. Trustee's office regarding the continued use of these Bank Accounts on a postpetition basis. The Debtors have already been in communication with the U.S. Trustee and counsel for Arizona Bank & Trust and will continue to engage in good faith discussions with the U.S. Trustee to make other arrangements that are acceptable to the U.S. Trustee and the Court. To enable such discussions, the Debtors request a 30-day extension to either come into compliance with the U.S. Trustee's requirements or to make other arrangements that would be acceptable to the U.S. Trustee (without prejudice to the Debtors' rights to request further extensions by motion to the Court).

### Basis for Relief

I.     **Maintaining the Existing Cash Management System Is Essential to the Debtors' Ongoing Operations and Restructuring Efforts.**

27.     Allowing the Debtors to maintain continuous use of the Cash Management System and Bank Accounts will minimize the disruption to the Debtors' operations. To ensure that all transfers and transactions will be documented in its books and records, the Debtors will maintain records of all transfers within the Cash Management System.

28.     Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1); *see Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (included within the purview of section 363(c) is a debtor's ability to continue the

"routine transactions" necessitated by a debtor's cash management system). Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as relatively "simple matter[s]." *See, e.g.*, *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets"); *In re Sandridge Energy, Inc.*, No. 16-32488, 2018 WL 889357, at *3 (Bankr. S.D. Tex. Feb. 5, 2018) (stating that maintaining a centralized cash management system allows the debtors to manage the cash of operating units in a cost-effective, efficient manner).

29.     Requiring the Debtors to adopt a new, segmented cash management system during these chapter 11 cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations. Importantly, the Cash Management System provides the Debtors with the ability to quickly track and report the location and amount of funds, which, in turn, allows management to track and control such funds, ensure cash availability, and reduce administrative costs through a centralized method of coordinating the collection and movement of funds. Any disruption of the Cash Management System could have a negative effect on the Debtors' restructuring efforts. Indeed, absent the relief requested herein, requiring the Debtors to adopt a

new, segmented cash management system would cause the Debtors' operations to grind to a halt, jeopardizing the Debtors' business enterprise. By contrast, maintaining the current Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies. Finally, maintaining the current Cash Management System will allow the Debtors' treasury and accounting employees to focus on their daily responsibilities.

30.      The U.S. Trustee Guidelines require debtors in possession to, among other things, close all existing bank accounts and open new debtor in possession accounts. These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims. Considering, however, that the Debtors' businesses and financial affairs are complex and require the collection, disbursement, and movement of funds through the Debtors' multiple Bank Accounts, enforcement of these provisions of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt the Debtors' operations. Absent the relief requested herein, the Debtors will be required to, among other things, (a) close all existing bank accounts and open new debtor-in-possession accounts for each entity, (b) maintain separate debtor in possession accounts for cash collateral, (c) obtain checks that bear the designation "debtor-in-possession," and (d) create new systems for manually issuing checks and paying post-petition obligations. The delays that will result from opening the new accounts and revising cash management procedures would disrupt the Debtors' operations at this critical time and would potentially erode the value of the Debtors' business. Because the Debtors have employed sophisticated financial and legal professionals in these cases, closing accounts is an unnecessary step to effectively demarcate pre- and postpetition transactions. Accordingly, the Debtors respectfully request that the Court allow them to operate each of the

4828-8653-6413

Bank Accounts listed on **Exhibit A** attached hereto, as they were maintained in the ordinary course of business before the Petition Date.

31.     The Debtors respectfully submit that parties in interest will not be harmed by the Debtors' continued use of the present Cash Management System, including maintenance of the Bank Accounts and the Intercompany Transactions, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of prepetition obligations.  Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of each of the Debtors' respective treasury departments.  The Debtors will continue to work closely with the Cash Management Banks to ensure that appropriate procedures are in place to prevent checks issued prepetition from being honored without the Court's approval.  In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interest of the Debtors' estates and creditors.

**II.     Authorizing the Cash Management Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business Is Warranted.**

32.     Moreover, the Debtors respectfully request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without disruption and in the ordinary course of business.  The Debtors further respectfully request that the Court authorize and direct the Cash Management Banks to receive, process, honor, and pay any and all checks, wire transfers, credit cards, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, credit card, or ACH payments are dated prior to or subsequent to the Petition Date. Notwithstanding the

foregoing, any check, draft, or other notification that the Debtors advise the Cash Management Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Cash Management Banks only to the extent authorized by order of the Court. If the Debtors' ability to conduct transactions by these methods is impaired, the Debtors may be unable to perform under certain contracts and payments to vendors could be delayed, resulting in unnecessary disruption to their business operations and the incurrence of additional costs.

33.     The Debtors also respectfully request that, to the extent a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good faith belief that the Court has authorized such prepetition check or item to be honored, such Cash Management Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition. Such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise.

34.     Courts in this District routinely grant similar relief, including authorizing a debtor's continued use of its existing cash management procedures and policies. *See, e.g.*, *In re CiCi's Holdings, Inc.*, No.21-30146 (SGJ) [Docket No. 46] (Bankr. N.D. Tex. Jan. 27, 2021); *In re Studio Movie Grill Holdings, LLC*, No. 20-32622 [Docket No. 96] (Bankr. N.D. Tex. Oct. 29, 2020); *In re TriVascular Sales LLC*, No. 20-31840 [Docket No. 204] (Bankr. N.D. Tex. Sept. 16, 2020); *In re Tuesday Morning Corp.*, No. 20-31476 [Docket No. 68] (Bankr. N.D. Tex. May 28, 2020); *In re The LaSalle Grp., Inc.*, No. 19-31484 [Docket No. 215] (Bankr. N.D. Tex. July 17, 2019); *In re PHI, Inc.*, No. 19-30923 [Docket No. 271] (Bankr. N.D. Tex. April 17, 2019); *In re Energy & Expl. Partners, Inc.*, No. 15-44931 [Docket No. 427] (Bankr. N.D. Tex. Dec. 10, 2015);

4828-8653-6413

*In re ALCO Stores, Inc.*, No. 14-34941 [Docket No. 70] (Bankr. N.D. Tex. Oct. 16, 2014);

*In re Reddy Ice Holdings, Inc.*, No. 12-32349 [Docket No. 110] (Bankr. N.D. Tex. Apr. 19, 2012);

*In re IDEARC Inc.*, No. 09-31828 [Docket No. 156] (Bankr. N.D. Tex. Apr. 19, 2009); *In re Pilgrim Corp.*, No. 08-45664 [Docket No. 69] (Bankr. N.D. Tex. Dec. 1, 2008).[13]

35.     Similarly, courts in this district and others have recognized that strict enforcement of the U.S. Trustee Guidelines does not always serve the purposes of chapter 11 and have therefore waived such requirements or replaced them with alternative procedures. *See, e.g., In re Tuesday Morning Corp.*, No. 20-31476 (HDH) [Docket No. 68] (Bankr. N.D. Tex. May 28, 2020) (waiving certain U.S. Trustee Guidelines); *In re TriVascular Sales LLC*, No. 20-31840 [Docket No. 62] (Bankr. N.D. Tex. Sept. 16, 2020) (interim order extending deadlines to comply with U.S. Trustee guidelines and permitting continued use of bank accounts that were not approved by U.S. Trustee); *In re Goodman Networks Inc.*, No. 17-31575 (MI) [Docket No. 57] (Bankr. S.D. Tex. Mar. 15, 2017) (interim order waiving the U.S. Trustee Guidelines and allowing the continued use of cash management systems and prepetition bank accounts). Accordingly, to the extent that the relief requested herein conflicts with the U.S. Trustee Guidelines, the Debtors request the Court waive or extend the Debtors' obligations to comply with such requirements by thirty days to avoid business disruptions and inefficiencies.

## III.     The Court Should Authorize the Debtors to Pay Prepetition Amounts Owed on Account of the Cash Management System, Including Intercompany Claims.

36.     The Debtors' funds move through the Cash Management System as described above and, at any given time, there may be prepetition amounts outstanding on account of the Cash Management System, including Intercompany Claims. Any non-payment of prepetition amounts

---

[13] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

owed could cause serious disruptions to the Debtors' estates. As such, the Debtors respectfully request that the Court authorize the Debtors to pay any prepetition amounts owed in connection with the Cash Management System.

37.     Courts in the Fifth Circuit and elsewhere have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

38.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty . . . to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

39.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See Just for Feet*, 242 B.R. at 825−26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191−92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

40.     In addition to seeking authority to continue to pay Intercompany Claims, the Debtors also request that the Court authorize the Debtors to continue to pay the Bank Fees, including any prepetition Bank Fee, and further authorize the Cash Management Banks to chargeback returned items to the Bank Accounts, whether such items are dated prior to, on, or

subsequent to the Petition Date, in the ordinary course of business. The Debtors request that the Court order that liens on any of the Bank Accounts granted to creditors will not have priority over the Bank Fees of the respective Cash Management Bank at which the Bank Account is located. The Debtors further request authority to satisfy prepetition credit card processing fees and related expenses which are necessary to continue processing credit cards.

41.     The Debtors' continued use of the Cash Management System, including payment of Intercompany Claims and payment of Bank Fees, will facilitate their transition into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses and minimizing delays in the payment of postpetition amounts due. As described above, the Debtors pay Bank Fees to the Cash Management Banks to facilitate the use of their Bank Accounts. Non-payment of these fees could cause disruption to their Cash Management System. Similarly, as described above, the Debtors in the ordinary course of business engage in Intercompany Transaction with other Debtors, which are an essential component of the Debtors' operations and Cash Management System. Any disruption of the Intercompany Transactions, or non-payment of prepetition amounts due in connection with the Cash Management System, would severely disrupt the Debtors' operations to the detriment of Debtors and their estates.

42.     Accordingly, the Debtors respectfully submit that a sound business purpose exists to authorize payment of prepetition amounts due in connection with the Cash Management System, including Intercompany Claims and Bank Fees.

**IV.    The Court Should Authorize the Debtors to Continue Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Claims.**

43.     The Debtors' funds move through the Cash Management System as described above. At any given time, there may be Intercompany Claims owed by one Debtor or to another Debtor. Intercompany Transactions are made between and among Debtors in the ordinary course

20

as part of the Cash Management System.[14]  The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all Intercompany Transactions previously described.  The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' and each of their estates' detriment.  Accordingly, the Debtors respectfully submit that the continued performance of the Intercompany Transactions is in the best interest of the Debtors' estates and their creditors and, therefore, the Debtors should be permitted to continue such performance.

44.    The Debtors further request that pursuant to section 503(b)(1) of the Bankruptcy Code, any Intercompany Claims against the Debtors on account of the Intercompany Transactions be accorded administrative expense status.  If all Intercompany Claims against the Debtors are accorded administrative expense status, each entity will continue to bear ultimate payment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions will jeopardize the recoveries available to each Debtor's respective creditors.  For the avoidance of doubt, the relief requested herein with respect to the postpetition Intercompany Transactions and Intercompany Claims resulting therefrom shall not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any Intercompany Claims or the Intercompany Transaction(s) from which such Intercompany Claims may have arisen.

45.    Administrative expense treatment for Intercompany Claims has been granted in chapter 11 cases comparable to these chapter 11 cases.  *See, e.g.*, *In re CiCi's Holdings, Inc.*,

---

[14] Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among large enterprises similar to the Debtors, the Debtors submit the Intercompany Transactions are ordinary course transactions within the meaning of 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  Moreover, the continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtors' ability to operate their businesses as debtors in possession.

4828-8653-6413

No.21-30146 (SGJ) (Bankr. N.D. Tex. Jan. 27, 2021) [Docket No. 46] (granting administrative expense status to intercompany claims); *Studio Movie Grill Holdings, LLC*, No. 20-32622 (SGJ) (Bankr. N.D. Tex. Oct. 29, 2020) [Docket No. 96] (same); *In re TriVascular Sales LLC*, No. 20-31840 (SGJ) (Bankr. N.D. Tex. Sept. 16, 2020) [Docket No. 204] (same); *In re Tuesday Morning Corp.*, No. 20-31476 (HDH) (Bankr. N.D. Tex. May 28, 2020) [Docket No. 68] (same).[15]

## V. Cause Exists to Waive or Extend the Debtors' Deadline to Comply with Section 345 of the Bankruptcy Code to the Extent It Is Applicable to the Cash Management System.

46.     To the extent the Cash Management System does not strictly comply with section 345 of the Bankruptcy Code, the Debtors further seek a waiver or thirty-day grace period to come into compliance with the deposit and investment requirements set forth therein. Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Section 345(b) of the Bankruptcy Code requires that a debtor's bank post a bond unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." 11 U.S.C. § 345(b).

47.     As discussed above, each of the Bank Accounts are maintained at FDIC-insured banks and therefore are in compliance with section 345(b) of the Bankruptcy Code. Out of an abundance of caution, to the extent that any of the Debtors' Bank Accounts do not comply strictly with section 345 of the Bankruptcy Code, the Debtors submit that cause exists to waive any such noncompliance or extend the Debtors' deadline to comply with section 345(b) by a thirty-day grace period from the date of filing because all funds are deposited safely and prudently at financially

---

[15] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

stable banking institutions in a manner specifically designed to preserve capital, provide liquidity, and generate return.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

48. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

49. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the requested relief, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity

of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

50.    The Debtors will provide notice of this Motion to the following parties or their counsel:  (a) the Office of the U.S. Trustee for the Northern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to Arizona Bank & Trust; (d) counsel to the proposed DIP Lender; (e) the United States Attorney's Office for the Northern District of Texas; (f) the Internal Revenue Service; (g) the state attorneys general for states in which the Debtors conduct business; (h) the Cash Management Banks; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

## No Prior Request

51.    No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter orders, substantially in the forms attached hereto as **Exhibit B** and **Exhibit C**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 20th day of April, 2021.

**GRAY REED**

By: */s/ Jason S. Brookner*
     Jason S. Brookner
     Texas Bar No. 24033684
     Aaron M. Kaufman
     Texas Bar No. 24060067
     Amber M. Carson
     Texas Bar No. 24075610
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:    (214) 954-4135
Facsimile:     (214) 953-1332
Email:        jbrookner@grayreed.com
            akaufman@grayreed.com
            acarson@grayreed.com

**PROPOSED COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION**

**CERTIFICATE OF SERVICE**

I certify that on April 20, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Jason S. Brookner*
Jason S. Brookner

25

## Exhibit A

## Bank Accounts

| Entity / Entity Group | Bank | Account Type | Last Four of Account Number |
|---|---|---|---|
| Alamo Buffets Payroll, LLC | Arizona Bank & Trust | Payroll Concentration | 9371 |
| Alamo Buffets Payroll, LLC | Arizona Bank & Trust | PPP Concentration Account | 6118 |
| Alamo Fresh Payroll, LLC | Arizona Bank & Trust | Payroll Concentration | 9366 |
| Alamo Fresh Payroll, LLC | Arizona Bank & Trust | PPP Account | 6142 |
| Buffets LLC | Arizona Bank & Trust | Concentration Account | 2555 |
| Buffets LLC | Arizona Bank & Trust | Disbursement Account | 2560 |
| Buffets LLC | Arizona Bank & Trust | Elavon Merch Account | 2198 |
| Buffets LLC | Arizona Bank & Trust | Merchant Deposit Account | 2584 |
| Buffets LLC | Arizona Bank & Trust | Utility Account | 3927 |
| FMP SA Management Group, LLC | Arizona Bank & Trust | Concentration Account | 3056 |
| FMP SA Management Group, LLC | Bank of America | Concentration Account | 5573 |
| Fresh Acquisitions, LLC | Arizona Bank & Trust | Concentration Account | 7080 |
| Fresh Acquisitions, LLC | Bank of America | Depository Account | 7197 |
| Fresh Acquisitions, LLC | Simmons Bank | Depository Account | 8441 |
| Fresh Acquisitions, LLC | Arizona Bank & Trust | Disbursement account | 7099 |
| Fresh Acquisitions, LLC | Arizona Bank & Trust | Elavon Merch Account | 2184 |
| Fresh Acquisitions, LLC | Arizona Bank & Trust | Merchant Deposit Account | 7103 |
| Fresh Acquisitions, LLC | Arizona Bank & Trust | Utility Account | 3908 |
| Tahoe Joe's Inc. | Arizona Bank & Trust | Concentration Account | 8972 |
| Tahoe Joe's Inc. | Bank of America | Depository Account | 2970 |
| Tahoe Joe's Inc. | Arizona Bank & Trust | Disbursement | 8986 |
| Tahoe Joe's Inc. | Arizona Bank & Trust | Utility Account | 8991 |

## **Exhibit B**

## **Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FRESH ACQUISITIONS, LLC, *et al.*,[1] | § | Case No. 21-30721 (SGJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |
| | § | **Re: Docket No. _** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE**
**TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND PERFORM**
**INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"): (a) authorizing the Debtors to

continue to operate their Cash Management System and continue to perform the Intercompany

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Alamo Fresh Payroll, LLC (1590); Fresh Acquisitions, LLC (2795); Alamo Ovation, LLC (9002); Buffets LLC (2294); Hometown Buffet, Inc. (3002); Tahoe Joe's Inc. (7129); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); Food Management Partners, Inc. (7374); FMP SA Management Group, LLC (3031); FMP-Fresh Payroll, LLC (8962); FMP-Ovation Payroll, LLC (1728); and Alamo Buffets Payroll, LLC (0998). The Debtors' principal offices are located at 2338 N. Loop 1604 W., Suite 350, San Antonio TX, 78248, United States.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

4828-8653-6413

Transactions consistent with historical practice; and (b) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.  The Motion is granted on an interim basis as set forth herein.

2.  The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2021, at ____:____ __.m., prevailing Central Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _____, 2021.

3.  The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System, and Bank Accounts and Business Forms as described in the Motion in the ordinary course of business and consistent with the Debtors' historical practice; (b) honor their prepetition obligations related thereto, including the Bank Fees; and (c) continue to perform Intercompany Transactions consistent with historical practice.

4.      The Debtors are authorized, but not directed, to: (a) designate, maintain, close, and continue to use their existing Bank Accounts, including, but not limited to, the Bank Accounts identified on Exhibit A to the Motion, in the names and with the account numbers existing immediately before the Petition Date; (b) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (c) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts; (d) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts; and (e) open new debtor in possession bank accounts as needed at banks that have executed a Uniform Depository Agreement with the U.S. Trustee or banks that are willing to immediately execute one; *provided*, *however*, that the Debtors shall give notice to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases prior to opening or closing a bank account.

5.      The Debtors are authorized to use all correspondence and other Business Forms (including, without limitation, letterhead, purchase orders, and invoices) substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession.

6.      The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without disruption and in the ordinary course of business, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

7.      To the extent any of the Debtors' Bank Accounts are not in compliance with 11 U.S.C. § 345(b) or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have

a period of 30 days from the date of entry of this Order (or such additional time to which the U.S. Trustee may agree) to either bring such Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; *provided* that nothing in the foregoing shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent such an arrangement cannot be reached within that time period (or such other period as agreed to by the Debtors and the U.S. Trustee). The Debtors may obtain a further extension of the 30-day period referenced above by written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

8.      For banks at which the Debtors hold bank accounts that are party to a depository agreement with the U.S. Trustee for the Northern District of Texas, within fifteen (15) days of the entry of this Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers, (c) identify each of its bank accounts held at such bank(s) as being held by a debtor in possession in a bankruptcy case, and (d) provide the bankruptcy case number.

9.      Subject to the terms hereof, the Debtors are authorized to open any new Bank Accounts or close any existing Bank Accounts and enter into any ancillary agreements including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate; *provided, however,* that opening such new Bank Accounts are subject to the conditions in paragraph 3 of this Order.

10.      The relief granted in this Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

4828-8653-6413

11.     The Debtors are authorized to promptly place stop payments on any unauthorized prepetition checks or ACH payments that should not be honored by a Cash Management Bank. Any Cash Management Banks that are provided with notice of this Order shall not honor or pay any bank payments drawn on any listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

12.     The Debtors' Cash Management Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further order of this Court for all checks drawn on the Debtors' account; *provided*, *however*, that no checks issued against the Debtors prior to the commencement of these chapter 11 cases shall be honored except as otherwise authorized by order of this Court and directed by the Debtors. The Cash Management Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business, without further order of this Court, for all checks drawn on the Debtors' accounts which are cashed at the Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date

13.     The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts (including any fees and costs associated with the same) resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

4828-8653-6413

14.     Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

15.     Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

16.     Those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

17.     The Debtors are authorized to continue engaging in Intercompany Transactions in the ordinary course of business. All postpetition payments from a Debtor under any postpetition

Intercompany Transactions authorized hereunder are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

18.     Nothing contained in the Motion or this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

19.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the Approved Budget, the Court's *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, and any final order entered by the Court in connection therewith.

20.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property

34

of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

21. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, whether such checks or other requests were submitted prior to, or after, the Petition Date, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

22. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts that are authorized to be paid in connection with the relief granted herein.

23. The requirements of Bankruptcy Rule 6003(b) for emergency relief are satisfied.

24. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

26. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

4828-8653-6413

27.     As soon as practicable after entry of this Order, the Debtors shall serve a copy of this Order on the Cash Management Banks.

28.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #

Submitted by:

Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar No. 24060067
Amber M. Carson
Texas Bar No. 24075610
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:      (214) 954-4135
Facsimile:      (214) 953-1332
Email:          jbrookner@grayreed.com
                akaufman@grayreed.com
                acarson@grayreed.com

**PROPOSED COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION**

**<u>Exhibit C</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FRESH ACQUISITIONS, LLC, *et al.*,[1] | § | Case No. 21-30721 (SGJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |
| | § | **Re: Docket No. _** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE
TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND PERFORM
INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"): (a) authorizing the Debtors to

continue to operate their Cash Management System and continue to perform the Intercompany

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Alamo Fresh Payroll, LLC (1590); Fresh Acquisitions, LLC (2795); Alamo Ovation, LLC (9002); Buffets LLC (2294); Hometown Buffet, Inc. (3002); Tahoe Joe's Inc. (7129); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); Food Management Partners, Inc. (7374); FMP SA Management Group, LLC (3031); FMP-Fresh Payroll, LLC (8962); FMP-Ovation Payroll, LLC (1728); and Alamo Buffets Payroll, LLC (0998). The Debtors' principal offices are located at 2338 N. Loop 1604 W., Suite 350, San Antonio TX, 78248, United States.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Transactions consistent with historical practice; and (b) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System and Bank Accounts, as described in the Motion in the ordinary course of business and consistent with the Debtors' historical practice; (b) honor their prepetition obligations related thereto, including the Bank Fees; and (c) continue to perform Intercompany Transactions consistent with historical practice.

3.      The Debtors are authorized, but not directed, to: (a) designate, maintain, close, and continue to use their existing Bank Accounts, including, but not limited to, the Bank Accounts identified on Exhibit A to the Motion, in the names and with the account numbers existing immediately before the Petition Date; (b) deposit funds in, and withdraw funds from, the Bank

Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (c) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts; (d) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts; and (e) open new debtor in possession bank accounts as needed at banks that have executed a Uniform Depository Agreement with the U.S. Trustee or banks that are willing to immediately execute one; *provided*, *however*, that the Debtors shall give notice to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases prior to opening or closing a bank account.

4.      The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without disruption and in the ordinary course of business, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

5.      To the extent any of the Debtors' Bank Accounts are not in compliance with 11 U.S.C. § 345(b) or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until _____, 2021 (or such additional time to which the U.S. Trustee may agree) to either bring such Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; *provided* that nothing in the foregoing shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent such an arrangement cannot be reached within that time period (or such other period as agreed to by the Debtors and the U.S. Trustee). The Debtors may obtain a further extension of the period referenced above by written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

4828-8653-6413

6.      Subject to the terms hereof, the Debtors are authorized to open any new Bank Accounts or close any existing Bank Accounts and enter into any ancillary agreements including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate; *provided, however,* that opening such new Bank Accounts are subject to the conditions in paragraph 3 of this Order.

7.      The relief granted in this Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

8.      The Debtors are authorized to promptly place stop payments on any unauthorized prepetition checks or ACH payments that should not be honored by a Cash Management Bank. Any Cash Management Banks that are provided with notice of this Order shall not honor or pay any bank payments drawn on any listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

9.      The Debtors' Cash Management Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further order of this Court for all checks drawn on the Debtors' account; *provided, however,* that no checks issued against the Debtors prior to the commencement of these chapter 11 cases shall be honored except as otherwise authorized by order of this Court and directed by the Debtors. The Cash Management Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business, without further order of this Court, for all checks drawn on the Debtors' accounts which are cashed at the Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date.

4828-8653-6413

10.     The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts (including any fees and costs associated with the same) resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

11.     Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

12.     Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

4828-8653-6413

13.     Those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

14.     The Debtors are authorized to continue engaging in Intercompany Transactions in the ordinary course of business. All postpetition payments from a Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

15.     Nothing contained in the Motion or this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

16.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the Approved Budget, the Court's *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, and any final order entered by the Court in connection therewith.

17.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable

6

non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

18.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, whether such checks or other requests were submitted prior to, or after, the Petition Date, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

19.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts that are authorized to be paid in connection with the relief granted herein.

7

4828-8653-6413

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

23.     As soon as practicable after entry of this Order, the Debtors shall serve a copy of this Order on the Cash Management Banks.

24.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #

Submitted by:

Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar No. 24060067
Amber M. Carson
Texas Bar No. 24075610
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:     (214) 954-4135
Facsimile:     (214) 953-1332
Email:          jbrookner@grayreed.com
                akaufman@grayreed.com
                acarson@grayreed.com

**PROPOSED COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION**

4828-8653-6413