# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FRESH ACQUISITIONS, LLC, *et al.*,[1] | § | Case No. 21-30721 (SGJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |

**DECLARATION OF MARK SHAPIRO, CHIEF RESTRUCTURING OFFICER, IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Mark Shapiro, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am the Chief Restructuring Officer of Fresh Acquisitions, LLC ("Fresh") and its affiliated above-captioned debtors and debtors in possession (collectively the "Debtors"). I have held this position since February 2, 2021.

2.  As Chief Restructuring Officer, I am responsible for overseeing the operations and financial activities of the Debtors, including, but not limited to, monitoring cash flow, business relationships, workforce issues, and financial planning. As a result of my tenure with the Debtors and my turnaround experience, my review of public and non-public documents, and my discussions with other members of the Debtors' management team, I am generally familiar with

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Alamo Fresh Payroll, LLC (1590); Fresh Acquisitions, LLC (2795); Alamo Ovation, LLC (9002); Buffets LLC (2294); Hometown Buffet, Inc. (3002); Tahoe Joe's Inc. (7129); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); Food Management Partners, Inc. (7374); FMP SA Management Group, LLC (3031); FMP-Fresh Payroll, LLC (8962); FMP-Ovation Payroll, LLC (1728); and Alamo Buffets Payroll, LLC (0998). The Debtors' principal offices are located at 2338 N. Loop 1604 W., Suite 350, San Antonio TX, 78248, United States.

the Debtors' businesses, financial condition, policies and procedures, day-to-day operations, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from the Debtors' employees or retained advisors that report to me in the ordinary course of my responsibilities.

3. I am over the age of 18, and I am authorized to submit this declaration (the "Declaration") on behalf of the Debtors in support of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "DIP Motion").[2]

4. Pursuant to the DIP Motion, the Debtors request authority to: (i) enter into a senior secured loan facility in an aggregate principal amount of up to $3,500,000 (the "DIP Financing") with the DIP Lender, comprised of $3,000,000 of New Money DIP Loans and $500,000 of DIP Roll-Up Loans; (ii) to use Cash Collateral of the DIP Lender and Arizona Bank & Trust ("AB&T"); and (iii) grant adequate protection to the DIP Lender and AB&T. It is my opinion, based on my experience as detailed below, that the proposed DIP Financing is the product of arm's-length negotiations, represents the best postpetition financing available to the Debtors given the circumstances of these chapter 11 cases, and that entering into the DIP Financing is in the best interest of the Debtors, the Debtors' estates, and all parties in interest.

5. References to the Bankruptcy Code (as defined herein), the chapter 11 process, and related legal matters are based on my understanding of such as explained to me by counsel. If called upon to testify, I would testify competently to the facts set forth in this declaration.

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the DIP Motion.

**Qualifications**

6.      I am a Senior Managing Director of GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley Advisory"), where I have been employed since 2016. Prior to that time I managed Challenger Advisors LLC, a Dallas-based turnaround financial advisory firm and before that served as Chief Financial Officer for a number of public companies, including Big Lots Inc. and Central Parking Corp, as well as private equity-owned portfolio businesses. I received my Bachelor of Science degree in accounting from The Ohio State University and began my career with Ernst & Young in New York. I am a Certified Public Accountant (inactive).

7.      I have over twenty-five years' experience as a turnaround advisor and corporate financial executive, and have advised debtors, secured lenders, trade creditors and equity holders in both out of court and in court proceedings. I have extensive experience in U.S. Bankruptcy Courts and have been involved in numerous chapter 11 cases and court-appointed receiverships.

8.      In addition to working with the Debtors, I have played various roles with respect to both company-side and creditor/committee-side engagements. Representative cases include PBS Brands Inc./Punch Bowl Social (CRO), Loves Furniture, Inc. (Debtor's FA), GGI Holdings LLC/Gold's Gym (Debtor's FA and Liquidating Trustee), Pine Creek Medical Center (CRO), Lockwood Holdings LLC (CRO), Uplift Rx LLC/Alliance Health (Debtors' FA and Liquidating Trustee), Neighbors Legacy Holdings Inc. (Unsecured Creditors Committee FA and Creditor Trustee), Eagle Pipe, LLC (Debtor's FA) and Bristow Group Inc. (Equity Committee FA).

**Debtors' Immediate Need for DIP Financing**

9.      The Debtors' prepetition capital structure is described in detail in the *Declaration of Mark Shapiro, Chief Restructuring Officer, in Support of Chapter 11 Petitions and First Day*

*Motion* (the "First Day Declaration").  I incorporate by reference herein my First Day Declaration and the statements made therein.

10. To finance these chapter 11 cases, the DIP Lender has agreed to provide the Debtors with DIP Financing in the principal amount of $3.5 million, comprised of $3.0 million in New Money DIP Loans and $0.5 million in DIP Roll-Up Loans, to refinance the $0.5 million advanced to the Debtors by the DIP Lender prepetition.  The DIP Financing will bear interest at the rate of 10% per annum and will mature on August 20, 2021.  Default interest will run at 12%, and the form of Interim Order also contains certain sale-related milestones.

11. Obtaining the DIP Financing is necessary to maintain the Debtors' business operations and to conduct these chapter 11 cases.  In the current environment, it is critical for the Debtors to maintain sufficient liquidity to fund operations and to provide confidence to their vendors they are able to make timely payments.  The DIP Financing will provide the Debtors with the liquidity needed to operate their business in the ordinary course during these chapter 11 cases, as well as finance these cases.  If the Debtors are unable to access the DIP Financing, there is a substantial risk that their ability to continue operating as a going concern will be negatively impacted, resulting in a significant deterioration in the value of the estate assets, and immediate and irreparable harm to the Debtors and their stakeholders.

12. Further, the Roll-Up Loans (that is, rolling up the prepetition $0.5 million advance by the DIP Lender) was a material and required component of the DIP Financing.  The roll up was a required feature and a condition to the DIP Lender's willingness to provide the DIP Financing.

13. The Debtors do not seek approval for the roll up at the Interim Hearing; instead, consideration of the roll up is being deferred until the Final Hearing.  I will submit a supplemental declaration prior to the Final Hearing with relation to the roll up, and provide market comps

showing that the proposed roll up with the ratio of new money to roll up at 6:1 is well within the range of roll ups approved by other courts both within this District and outside of this District.

**Debtors' Efforts to Obtain Postpetition Financing**

14. As set forth more fully in my First Day Declaration, Fresh Acquisitions' recent history has been impacted by the uncertainty, unexpected challenges, and ever-changing landscape resulting from the COVID-19 pandemic.

15. The Debtors' respective boards appointed me as CRO and retained the services of B. Riley Advisory on February 2, 2021. Since that time, B. Riley Advisory has provided financial advisory services which include exploring financing options to address the Debtors' liquidity constraints. To that end, B. Riley Advisory contacted approximately 20 other financing sources for a potential DIP loan. As of today, none of those parties is willing to provide financing on terms equal to or better than that proposed in the DIP Financing. The parties contacted were unwilling to take a junior lien on any assets (as proposed in the DIP Financing with respect to the Furr's Debtors' IP Collateral), were unwilling to engage in a priming fight with AB&T, and also found the size of the DIP transaction to be too small. That said, between the time of the Interim Hearing on the DIP Motion and the Final Hearing, I plan to work with the Debtors, the Independent Director, and third parties to further market the DIP Financing to further ensure that the Debtors will incur postpetition financing on the best possible terms.

16. Although the DIP Lender is effectively an insider, the terms of the DIP Financing are fair and reasonable under the circumstances, and the DIP Financing is the product of good faith, arms-length negotiations and approvals by both Vin Batra, in his capacity as Independent Director, and myself. The DIP Facility was the best financing alternative available to the Debtors because it: (i) avoids delay and expense; (ii) provides sufficient financing to meet the Debtors' proposed liquidity needs; and (iii) is a critical component necessary to obtain the DIP Lender's

consent and support for a chapter 11 Plan.  I also believe, based on my experience and my knowledge of the Debtors and their operations, that the milestones contained in the Interim Order (and in the DIP Financing documents) are reasonable and achievable, and will assist with a swift exist from chapter 11.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated:  April 20, 2021                               /s/ *Mark Shapiro*
                                                       Mark Shapiro
                                                       Senior Managing Director
                                                       GlassRatner Advisory & Capital Group, LLC
                                                       d/b/a B. Riley Advisory Services