# EXHIBIT A
# DOCUMENT PRODUCTION REQUESTS

### A. DEFINITION OF TERMS

The following terms shall have the following meanings:

1. The term "<u>and</u>" and "<u>or</u>" and any other conjunctions or disjunctions used herein shall be read both conjunctively and disjunctively so as to require the production of all documents (as hereinafter defined) responsive to all or any part of each particular request for production in which any conjunction or disjunction appears.

2. The term "<u>any</u>," "<u>each</u>," and "<u>all</u>" shall be read to be all inclusive, and to require the production of each and every document (as hereinafter defined) responsive to the particular request for production in which such term appears.

3. The term "<u>Document(s)</u>" shall mean and include, without limitation, the originals (or copies if the originals are unavailable) of writings and any other written form in the custody, possession, or control of the Underwriters, whether printed, handwritten, recorded or photocopies or otherwise reproduced, and whether claimed to be exempt from production pursuant to a properly-asserted privilege or for any other reason, with this definition including, for illustrative purposes and without limitation, all electronic media or other tangible forms in which information is stored and all written or graphic matter of every kind and description, however produced or reproduced, whether draft or final, original or reproduction, including, but not limited to, letters, correspondence, memoranda, notes, films, transcripts, contracts, agreements, licenses, memoranda of telephone conversations or personal conversations, microfilm, telegrams, books, newspaper articles, magazines, advertisements, periodicals, bulletins, circulars, pamphlets, statements, notices, reports, rules, regulations, directives, teletype messages, minutes of meetings, interoffice communications, reports, financial statements, ledgers, books of account, proposals, prospectuses, offers, orders, receipts, working papers, desk calendars,

appointment books, diaries, time sheets, logs, movies, tapes for visual or audio reproduction, recordings or materials similar to any of the foregoing, however denominated, and including writings, drawings, graphs, charts, photographs, data processing results, printouts and computations (both in existence and stored in memory components), and other compilations from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form. The term "document" further includes all copies of a document which contain any additional writing, underlining, notes, deletions, or any other markings or notations, or are otherwise not identical copies of the original.

4. "Communication" shall mean any transfer of information, oral or written, be it in the form of facts, ideas, inquiries, opinions or otherwise, by any means, at any time or place, under any circumstances, and is not limited to transfers between persons, but includes other transfers, such as records and memoranda to the file.

5. The phrases "related to" or "pertaining to" shall mean mention, refer to, report or reflect on, concern or pertain to, support, or be in any way logically or factually, directly or indirectly, connected with the matter discussed.

6. "ABT" shall mean Arizona Bank & Trust.

7. "ABT Loan Documents" shall mean any and all documents evidencing obligations of the Debtors, their Affiliates, Insiders and Guarantors to ABT.

8. "Affiliates" shall have the same meaning as set forth in 11. U.S.C. § 101(2).

9. "Alamo Dynamic" shall mean Alamo Dynamic, LLC, a Texas limited liability company.

10. "Debtors" shall mean those entities in the jointly administered Chapter 11 Case No. 21-30721 (SGJ) in the Bankruptcy Court for the Northern District of Texas. Individual Debtors may be listed by name, herein.

11. "Financials" shall mean any and all balance sheets, profit and loss statements, cash flow statements, reviews and such similar Documents relating to or evidencing financial condition.

12. "FMP" shall mean FMP SA Management Group, LLC, a Texas limited liability company.

13. "Fresh" shall mean Fresh Acquisitions, LLC, a Delaware limited liability company.

14. "Furr's" shall mean Alamo Furr's, LLC, a Texas limited liability company.

15. "Furr's II" shall mean Alamo Furr's II, LLC, a Texas limited liability company.

16. "Insider" shall have the same meaning as set forth in 11 U.S.C. § 101(31).

17. "Petition Date" means April 20, 2021.

18. "Relevant Period" shall mean April 1, 2017 to the Petition Date.

19. "Transfer" shall have the same meaning as set forth in 11 U.S.C § 101(54).

20. "VitaNova" shall mean VitaNova Brands, LLC, a Texas limited liability company.

21. "Guarantors" shall mean Furr's, Furr's II, Allen Jones, Larry and Rachel Harris, Jason and Tara Kemp, and Brian Padilla.

**B.  DOCUMENTS TO BE PRODUCED:**

1. Any and all applications, Financials, forms, certifications, affidavits, "forgiveness applications," disbursements and/or other Documents related to and Paycheck Protection Program funds or such other similar government stimulus funds obtained by the Debtors or any of their Affiliates or Insiders, including but not limited to Alamo Dynamic, Furr's, Furr's II and VitaNova; Sushi Zushi of Texas, LLC; Zios Restaurant Co. LLC; and Alamo Restaurants, LLC.

2. As referred to in the Limited Forbearance Agreement dated February 18, 2021 by and between ABT, Fresh, FMP, Alamo Dynamic, and the Guarantors: (a)

"Guarantor deliverables" described on page 6, paragraph 4c as brokerage and bank statements dated February 28, 2021; (b) "Borrower deliverables" described on page 6, paragraph 4d as i) evidence that property taxes are paid current and ii) audited or reviewed financial statements for year ending December 31, 2020; (c) Any commitments to refinance the loans as set forth on page 6, paragraph 4e.

    3.    Account statements and check registers (with check images) for the Relevant Period for each disbursement account owned by the Debtors, their Affiliates and Insiders, including but not limited to Alamo Dynamic, Furr's, Furr's II and VitaNova; and the Guarantors.

    4.    Financials for the Relevant Period for the Debtors and their Affiliates and Insiders, including but not limited to Alamo Dynamic, Furr's, Furr's II and VitaNova; and the Guarantors.

    5.    Any valuations, offers to purchase, letters of intent to purchase during the Relevant Period with respect to any assets owned by the Debtors their Affiliates and Insiders, including but not limited to Alamo Dynamic, Furr's, Alamo Furr's II, and VitaNova.

    6.    Purchase agreements, assignments, bills of sale related to or pertaining to Alamo Dynamic during the Relevant Period.

    7.    Assignment of Deposit Account dated approximately June 29, 2015 and any amendments or modifications.

    8.    Agreement to Provide Insurance referred to in the ABT Loan Documents and any insurance policies provided.

    9.    Documents related to the Deposit Account held by Catalina Restaurant Group referred to in the Amendment to Promissory Note dated August 18, 2015.

    10.    Commercial Pledge and Security Agreement with Catalina Restaurant Group.

11. Promissory notes, security agreements, deeds of trust, payment histories and other such documents related to any direct loans made to the Guarantors.

4844-2544-8941 v2 [54097-2]