

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 27, 2021**

_____
**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FRESH ACQUISITIONS, LLC, *et al.*,[1] | § | Case No. 21-30721 (SGJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | **Re: Docket No. 300** |

**ORDER (I) AUTHORIZING AND APPROVING
THE SETTLEMENT BY AND BETWEEN THE DEBTORS AND
ARIZONA BANK AND TRUST AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] filed by the above-captioned debtors and debtors in

possession (the "Debtors"), for entry of an order (this "Order") (a) authorizing the Debtors' entry

into the Modified Forbearance Agreement attached hereto as **Exhibit 1**, by and between the

Debtors and Arizona Bank & Trust ("AB&T"), and (b) granting related relief, all as more fully set

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Alamo Fresh Payroll, LLC (1590); Fresh Acquisitions, LLC (2795); Alamo Ovation, LLC (9002); Buffets LLC (2294); Hometown Buffet, Inc. (3002); Tahoe Joe's Inc. (7129); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); Food Management Partners, Inc. (7374); FMP SA Management Group, LLC (3031); FMP-Fresh Payroll, LLC (8962); FMP-Ovation Payroll, LLC (1728); and Alamo Buffets Payroll, LLC (0998). The Debtors' principal offices are located at 2338 N. Loop 1604 W., Suite 350, San Antonio, TX 78248, United States.

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion.

forth in the Motion; and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that notice of the Motion and the hearing thereon was sufficient under the circumstances, and that no other or further notice is required; and the Court having determined that the relief requested in the Motion is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates, and good and sufficient cause having been shown, it is HEREBY ORDERED THAT:

1.      The Settlement is approved.

2.      The Debtors are hereby authorized to enter into the Modified Forbearance Agreement and enter into, perform, execute, and deliver all documents, and take all actions, necessary to immediately and fully implement the Settlement in accordance with the terms, conditions, and agreements set forth in the Modified Forbearance Agreement, all of which, including the mutual releases contained therein, are hereby approved.[2]

3.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

4.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

5.      Except as expressly set forth in this Order or the Modified Forbearance Agreement, nothing in this Order or the Modified Forbearance Agreement shall be construed as a release by the Debtors or their estates of Alamo Dynamic, LLC, the Guarantors, or any of their managers, officers, directors, agents or affiliates from any causes of action including the Chapter 5 Avoidance Actions described in Sections 544 through 550 of the Bankruptcy Code.

---

[2] This release does not apply to the PPP loan extended by AB&T to Fresh, for which Fresh has submitted a loan forgiveness application.

4847-3380-1971

6. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #

Submitted by:

Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar No. 24060067
Amber M. Carson
Texas Bar No. 24075610
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:      (214) 954-4135
Facsimile:      (214) 953-1332
Email:          jbrookner@grayreed.com
                akaufman@grayreed.com
                acarson@grayreed.com

**COUNSEL TO THE DEBTORS**
**AND DEBTORS IN POSSESSION**

3

**Exhibit 1**

**Modified Forbearance Agreement**

4847-3380-1971

# MODIFICATION TO LIMITED FORBEARANCE AGREEMENT
## ("Agreement")

**DATE:**                  July __, 2021

**PARTIES:**

|  |  |
|---|---|
| Lender: | Arizona Bank & Trust ("Lender")<br>Attn: Jim Klussman<br>2036 E. Camelback Road<br>Phoenix, AZ 85016 |
| Borrowers: | Alamo Dynamic, LLC ("Alamo")<br>2338 N. Loop 1604 W. Ste 350<br>San Antonio TX, 78248<br><br>Fresh Acquisitions, LLC ("Fresh")<br>2338 N. Loop 1604 W. Ste 350<br>San Antonio TX, 78248<br><br>FMP SA Management Group, LLC ("FMP")<br>2338 N. Loop 1604 W. Ste 350<br>San Antonio TX, 78248 |
| Guarantors: | Alamo Furr's, LLC<br>2338 N. Loop 1604 W. Ste 350<br>San Antonio TX, 78248<br><br>Alamo Furr's II, LLC<br>2338 N. Loop 1604 W. Ste 350<br>San Antonio TX, 78248<br><br>Allen Jones<br>2338 N. Loop 1604 W. Ste 350<br>San Antonio TX, 78248<br><br>Larry and Rachel Harris<br>2338 N. Loop 1604 W. Ste 350<br>San Antonio TX, 78248<br><br>Jason and Tara Kemp<br>2338 N. Loop 1604 W. Ste 350<br>San Antonio TX, 78248 |

Brian Padilla
2338 N. Loop 1604 W. Ste 350
San Antonio TX, 78248

Lender, Borrowers, and Guarantors are sometimes collectively referred to herein as the "Parties" and individually as a "Party."

## **RECITALS**

A.      On or about January 2, 2015, Borrowers Fresh Acquisitions, LLC ("Fresh") and Alamo Dynamics, LLC ("Alamo" and together with Fresh, the "Original Borrowers") executed the *Commercial Loan Agreement* ("CLA") with the Bank. Pursuant to the CLA, on or about January 2, 2015, the Bank made a secured loan to Original Borrowers in the principal amount of $8,707,500.00 (the "RE Loan").

B.      As evidence of the RE Loan, Original Borrowers executed the *Promissory Note* of even date, in the principal amount of $8,707,500.00 (the "RE Note").

C.      Contemporaneously with the execution and delivery of the CLA and RE Note, each Guarantor and Borrower FMP SA Management Group, LLC ("FMP") executed a form of Continuing Guaranty guaranteeing Original Borrowers' obligations under the RE Note and the CLA.

D.      On or about June 29, 2015, Original Borrowers and Bank entered into a Modification to Commercial Loan Agreement ("First Modification") incorporating, among other things, the terms and conditions of a short term loan by the Bank to Original Borrowers in the principal amount of $14,500,000.00 (the "Bridge Loan" and together with the RE Loan, the "Loans") evidenced by a new Promissory Note in the same amount (the "Bridge Note" and together with the RE Note, the "Notes").

E.      Contemporaneously with the execution and delivery of the First Modification and Bridge Note, each Guarantor and FMP executed a form of Continuing Guaranty guaranteeing Original Borrowers' obligations under the Bridge Note and the CLA, as modified.

F.      On or about August 18, 2015, Original Borrowers, Guarantors, FMP, and the Bank (collectively, the "Parties") entered into a Second Modification to Commercial Loan Agreement ("Second Modification") incorporating, among other things, an agreement by the Parties to modify the Bridge Loan and the collateral securing the Bridge Loan.

G.      On or about December 17, 2015, the Parties entered into a Third Modification to Loan Agreement ("Third Modification") pursuant to which the Parties agreed to, among other things, further modify the Bridge Loan and the Loan Documents (as defined below).

H.      On or about December 20, 2016, the Parties entered into a Fourth Modification to Loan Agreement ("Fourth Modification") pursuant to which the Bank agreed to provide limited waivers to certain covenant obligations of Original Borrowers under the Loan Documents.

2

I.      On or about May 30, 2017, the Parties entered into a Fifth Modification to Loan Agreement ("Fifth Modification") pursuant to which the Bank agreed to provide certain further limited waivers to certain covenant obligations of Original Borrowers under the Loan Documents and FMP was added as a Co-Borrower under the Notes. Original Borrowers and FMP (as Borrower) are collectively referred to hereinafter as "Borrowers".

J.      Effective as of February 28, 2021, the Parties entered into a Limited Forbearance Agreement (the "Forbearance Agreement and collectively with the First, Second, Third, Fourth and Fifth Modification Agreements, the "Modification Agreements") pursuant to which Lender agreed to forbear from exercising its rights and remedies with respect to certain Loan Defaults (as defined in the Forbearance Agreement).

K.      Among other things, the Forbearance Agreement required Borrowers to either effectuate and pay down of $1.0 million on the Bridge Loan or fund and pledge a restricted deposit account to be held at Lender as security for the Bridge Loan in the amount of $1.0 million on or before June 30, 2021 (the "June 30 Deliverables"). The Forbearance Agreement further provided that the New Maturity Date of the Loans is July 31, 2021.

L.      Repayment of the Loans is secured by, among other things, a valid and perfected security interest in favor of the Bank in and to the personal property of each Borrower, as described below, and as evidenced on separate *Commercial Security Agreements,* executed by Original Borrowers on or about August 18, 2015, (collectively, the "Security Agreements") and granting a security interest in and to substantially all of their operating assets.

M.      The security interests granted to the Bank under the Security Agreements were validly perfected by the filing of UCC-1 Financing Statements with the states of Delaware and Texas, as applicable for each Borrower (collectively, the "UCC-1s").

N.      In addition, the Loans are secured by three separately recorded deeds of trust ("Deeds of Trust") including:

1.      Deed of Trust, Fixture Filing and Assignment of Rents dated January 2, 2015, and recorded on January 7, 2015, in the Office of the Lubbock County Recorder, State of Texas, under Instrument No. 2015000530, as modified from time-to-time thereafter and encumbering certain real property described more fully therein;

2.      Deed of Trust, Fixture Filing and Assignment of Rents dated January 2, 2015, and recorded on January 7, 2015, in the Office of the Lubbock County Recorder, State of Texas, under Instrument No. 2015000529, as modified from time-to-time thereafter and encumbering certain real property described more fully therein; and

3.      Deed of Trust, Fixture Filing and Assignment of Rents dated June 29, 2015, and recorded on August 10, 2015, in the Office of the Lubbock County Recorder, State of Texas, under Instrument No. 2015029067, as modified from time-to-time thereafter and encumbering certain real property described more fully therein.

Modificaton to Limited Forbearance Agreement
{0002260.0192/01235849.DOCX / 3}

O.     The CLA, Modification Agreements, Notes, Security Agreements, UCC-1s, Deeds of Trust, and each and every one of the guaranties executed by the Guarantors in favor of Lender are collectively referred to herein as the "Loan Documents."

P.     On April 20, 2021, Borrowers Fresh and FMP (collectively the "Bankruptcy Debtors") filed petitions for relief under Chapter 11 of the United States Bankruptcy Code 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") in a series of bankruptcy cases administratively consolidated before the U.S. Bankruptcy Court for the Northern District of Texas Dallas Division (the "Bankruptcy Court") as Case No. 21-30721 (SGJ) (the "Bankruptcy Case").

Q.     Borrowers are in default of their obligations under the Forbearance Agreement for not timely satisfying the June 30 Deliverables.

R.     Alamo and Guarantors have now requested that Lender agree to modify the Forbearance Agreement to allow them to cure the June 30 Deliverables and release certain limited collateral pledged by Alamo to secure the Loans consisting of Alamo's operating assets in exchange for a one-time payment by Alamo of $2,850,000.00.

S.     The Bankruptcy Debtors have agreed to cooperate with the modifications requested by Alamo and Guarantors subject to the exchange of full and complete mutual releases of claims between Lender and the Bankruptcy Debtors and Bankruptcy Court approval.

T.     Lender is willing to modify the Loan Documents and provide the accommodations requested, subject to the terms of this Agreement.

## COVENANTS

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     **Incorporation and  Accuracy of Recitals**. The Parties acknowledge, confirm and agree that the Recitals set forth above are true, accurate and correct, and the Recitals are incorporated into these Covenants without any difference or distinction between the two (2) segments of this Agreement.

2.     **Payment**. In addition to all other regularly scheduled payments due under the Loan Documents, on or before August 16, 2021, Alamo shall pay Lender $2,850,000.00, which shall be applied to the principal balance of the Bridge Loan (the "Alamo Payment").  Timely payment of the Alamo Payment shall satisfy the June 30 Deliverables.

3.     **Extended Forbearance Period; Maturity Date**.  Subject to Lender's timely receipt of the Alamo Payment, Lender agrees to extend the Forbearance Period and the New Maturity Date as those terms are defined in the Forbearance Agreement to and through September 30, 2021.

4.     **Limited Alamo Collateral Release**.  Upon receipt of the Alamo Payment, Lender shall record UCC-3's modifying the UCC-1s as to Alamo and releasing the following limited Alamo assets as

4

collateral for the Loans:

> **All inventory, equipment, work in process, rolling stock, cash, accounts, chattel paper, instruments of Debtor (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles), and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (Including but not limited to all insurance payments) of or relating to the foregoing property.**

Nothing contained herein shall be construed as an agreement by Lender to release any of the real or personal property as pledged as collateral for the Loans under the Deeds of Trust.

5.      **Mutual Releases Between Bankruptcy Debtors and Lender**. Upon receipt of the Alamo Payment, Lender on the one hand and the Bankruptcy Debtors on the other hand shall be deemed to have mutually released each other and their respective agents, officers, directors, managers, members, personal representatives, predecessors, successors and assigns from any and all claims, liens, demands, causes of action, controversies, offsets, obligations, losses, damages and liabilities of every kind and character whatsoever, at law or in equity, whether now known or unknown, and whether contingent or matured, liquidated or unliquidated, vested or contingent, choate or inchoate, including, without limitation, any action, omission, misrepresentation or other basis of liability founded either in tort or contract and the duties arising thereunder including, without limitation, those rights and claims arising under or in connection with the Loans, the Loan Documents, the Bankruptcy Code, and the Bankruptcy Case.  Lender shall thereafter take all steps reasonably appropriate to release all liens encumbering the property of each Bankruptcy Debtor and withdraw its claims in the Bankruptcy Case.  Nothing in the foregoing release shall be construed as releasing Alamo or any of the Guarantors from their separate covenants, agreements and liabilities under the Loan Documents.

6.      **Reaffirmation of Loan Documents**. Except as modified herein, the Loan Documents are ratified and affirmed by Alamo and Guarantors and shall remain in full force  and effect. Alamo and Guarantors acknowledge and agree that they waive and release any claims, counterclaims, defenses, personal or otherwise, or rights of setoff or recoupment whatsoever with respect to any of the indebtedness arising under the Loan Documents or to any of Lender's rights and remedies under the Loan Documents.  Except as contemplated by this Agreement, any property or rights to or  interest in property granted as security in the Loan Documents shall remain as security for the Loans and the obligations of Alamo and Guarantors in the Loan Documents and this Agreement.

7.      **Borrowers' Representations and Warranties**.  Borrowers and Guarantors represent and warrant to Lender as follows:

Modificaton to Limited Forbearance Agreement
{0002260.0192/01235849.DOCX / 3}

a. **Accuracy of Representations**. All representations and warranties made and given by Borrowers in connection with this Agreement are accurate and correct. All representations and warranties made and given by Borrowers and Guarantors in the Loan Documents were accurate and correct at the time they were given.

b. **No Default**. Other than the Loan Defaults, no Event of Default has occurred and is continuing under the Loan Documents, and no event has occurred and is continuing which, with notice or the passage of time or both, would be an Event of Default as of the date of this Agreement.

c. **Authorization**. This Agreement, and any instrument or agreement required hereunder, are within Borrowers' and Guarantors' (each an "Obligor" and collectively "Obligors") respective powers, have been duly authorized, and do not conflict with any of the organizational documents of any Obligor. The persons signing this Agreement on behalf of Borrowers and Guarantors represent and warrant that they have and maintain full authority to execute the Agreement on behalf of Borrowers or Guarantors for whom they are signing.

d. **Enforceable Agreements; No Conflicts**. The Loan Documents and this Agreement are legal, valid and binding agreements of Borrowers and Guarantors, enforceable in accordance with their respective terms, and any instrument or agreement required hereunder or thereunder, when executed and delivered, is (or will be) similarly legal, valid, binding and enforceable. Borrowers and Guarantors acknowledge and agree that the Recitals are a summary, and that they neither identify each and every obligation of Borrowers and Guarantors to Lender, nor identify each and every agreement set forth in the Loan Documents. All agreements between and/or among Borrowers, Guarantors and Lender continue to be legal, valid and binding agreements of Borrowers and Guarantors, enforceable in accordance with their respective terms, notwithstanding the omission of any such agreement from the Recitals. This Agreement does not conflict with any law, agreement or obligation by which any Obligor is bound.

e. **Financial Information**. All financial and other information that has been or will be supplied by Borrowers to Lender in connection with the Loan Documents and/or in connection with this Agreement, is true, complete and accurate, in all material respects.

8. **Bankruptcy Court Approval; Non-Performance**. The obligations of the parties under this Agreement shall be subject to the approval of the Bankruptcy Court and the timely performance of all Borrower obligations arising hereunder. Should the Bankruptcy Court decline to approve this Agreement or the Borrowers fail to timely perform any obligations as required hereunder, this Agreement shall be null and void.

9. **Acknowledgments and Agreements**. Borrowers acknowledge and agree as follows:

a. Lender is under no legal or equitable obligation to enter into this Agreement. Except as expressly provided hereunder, Lender does not waive, and shall not be deemed to have waived any rights or remedies with respect to the Loan Defaults.

b. Lender (including all its predecessors, affiliates, and their parent companies and/or subsidiaries) has not breached any duty to Borrowers or any Guarantor in connection with the Loans referenced herein, and Lender (including all its predecessors, affiliates, and their parent

6

companies and/or subsidiaries) has fully performed all obligations it may have had or now has to Borrowers and Guarantors.

c.    All interest, fees, or other charges imposed, accrued, or collected by Lender (including all its predecessors) under the Loan Documents or this Agreement, and the method of computing the interest, fees, or other charges, were and are proper and agreed to by Borrowers and Guarantors and were properly computed and collected.

d.    The agreements of Lender herein to forbear from exercising its remedies with respect to the Loan Defaults is full, fair and adequate consideration for Borrowers' and Guarantors' agreements set forth herein.

e.    Lender has no obligation to make any other additional loan or extension of credit to or for the benefit of any of the Borrowers, and Lender has no obligation to provide additional forbearance or to extend further accommodations to any Borrower or Guarantor.

f.    This Agreement is not intended for, and shall not be construed to be for, the benefit of any person not a signatory hereto.

g.    The relationships between Borrowers and Guarantors, on the one hand, and Lender, on the other hand, are strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between the Parties. Lender owes no fiduciary duty or any other special duty to any Party. The Parties are exercising their own judgment with respect to Borrowers' businesses. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform any party of any matter with respect to Borrowers' businesses. The Parties intend that Lender may reasonably rely on all information supplied by the Parties and any investigation or failure to investigate will not diminish Lender's right to so rely.

10.    **<u>Non-Bankruptcy Debtors' Releases of Lender</u>**.  In consideration of the agreements of Lender set forth in this Agreement, Alamo and each of the Guarantors, jointly and severally, and all of their respective affiliates, subsidiaries, agents, officers, directors, managers, members, personal representatives, predecessors, successors and assigns (individually and collectively, the "Releasors"), voluntarily, knowingly, unconditionally, and irrevocably, with specific and express intent, hereby fully release, remise, and discharge Lender, the parents of Lender and all other affiliates and predecessors of Lender, and all past and present officers, directors, agents, employees, servants, partners, shareholders, attorneys, managers, successors and assigns of Lender, for, from, and against any and all claims, liens, demands, causes of action, controversies, offsets, obligations, losses, damages and liabilities of every kind and character whatsoever, at law or in equity, whether now known or unknown, and whether contingent or matured, liquidated or unliquidated, vested or contingent, choate or inchoate, including, without limitation, any action, omission, misrepresentation or other basis of liability founded either in tort or contract and the duties arising thereunder, that the Releasors, or any one or more of them, has had in the past, or now has, by reason of any matter, cause or thing set forth in, relating to or arising out of, or in any way connected with or resulting from, the Loans referenced herein, the Loan Documents or this Agreement. Alamo acknowledges that the foregoing release is a material inducement to Lender's decision to extend to Alamo the financial accommodations hereunder and has been relied upon by Lender in agreeing to enter into this Agreement.

7

11.     **No Prejudice; Reservation of Rights.** This Agreement shall not prejudice any rights or remedies of Lender under the Loan Documents.  Except as provided herein, Lender reserves, without limitation, all  of its rights against any indemnitor, guarantor, or endorser of any of the Loan Documents.

12.     **No Impairment/Security.** Except as expressly set forth herein, the Loan Documents shall each remain unaffected and unmodified by this Agreement and all such Loan Documents shall remain in full force and effect. Except as expressly set forth herein, nothing  contained herein shall be deemed a waiver of any of the rights and remedies that Lender may  have against any Borrower or Guarantor or of any of Lender's rights and remedies arising out of the Loan  Documents.

13.     **Integration.** The Loan Documents and this Agreement: (a) integrate all the terms and conditions mentioned in or incidental to the Loan Documents; (b) supersede all oral negotiations and prior and other writings with respect to their subject matter;  and (c) are intended by the Parties as the final expression of the agreement with respect to the  terms and conditions set forth in those documents and as the complete and exclusive statement of  the terms agreed to by the Parties. If there is any conflict between the terms, conditions and provisions of the Loan Documents and this Agreement, this Agreement shall prevail. No  modification of this Agreement and/or the Loan Documents shall be effective unless in writing and  signed by the applicable Parties to be bound thereby.

14.     **Represented by Counsel. The Parties hereby represent to each other that they have reviewed this Agreement with competent legal counsel or voluntarily chose not to  seek the advice of counsel, and that no Party shall deny the validity of this Agreement on  the grounds that it did not understand the nature and consequences of this Agreement or  did not have the advice of independent counsel or an opportunity to consult counsel prior  to executing it.** The Parties further acknowledge that, prior to the execution of this Agreement,  each Party and each Party's respective counsel has had an adequate opportunity to make  whatever investigation or inquiry any of them deems necessary or desirable with respect to the  subject matter of this Agreement. The Parties have negotiated, read and approved the language of this Agreement, which language shall be construed in its entirety according to its fair meaning  and not strictly for or against any of the Parties who have worked together in preparing the final  version of this Agreement.

15.     **Invalidity**. If any court of competent jurisdiction determines any provision of this Agreement or any of the Loan Documents to be invalid, illegal or unenforceable, that portion  shall be deemed severed from the rest, which shall remain in full force and effect as though the  invalid, illegal or unenforceable portion had never been a part of this Agreement and/or the Loan Documents.

16.     **Governing Law, Waiver of Jury Trial**. This Agreement shall be governed by and construed according to the laws of the State of Texas without regard to any otherwise applicable principles of conflicts of laws. **In the event of judicial proceedings relating to disputes arising under this Agreement, Borrowers agree that all issues (including defenses, cross-claims and counter-claims) shall be resolved by a judge and not a jury; and, therefore, Borrowers hereby (A) covenant and agree not to elect a trial by jury of any issue  triable of right by a jury, and (B) waive any right to trial by jury fully to the extent that any such right will now or hereafter exist. This waiver of right to trial by jury is separately  given, knowingly and voluntarily, by Borrowers, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue.** Lender is hereby authorized and

8

requested to submit this Agreement to any court having jurisdiction over the subject matter and the Parties hereto, so as to serve as conclusive evidence of Borrowers' waiver of the right to jury trial. Further, Borrowers hereby certify that no representative or agent of Lender (including Lender's counsel) has represented, expressly or otherwise, to Borrowers that Lender will not seek to enforce this waiver of right to jury trial provision.

17. **Attorneys' Fees.** In the event of any lawsuit, arbitration, or Bankruptcy Proceeding involving the Indebtedness or disputes arising in connection with this Agreement, the prevailing Party is entitled to recover costs and reasonable attorneys' fees (including any reasonable allocated costs of in-house counsel) incurred in connection with the lawsuit, arbitration, or Bankruptcy Proceeding.

18. **Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns; provided, however, Borrowers may not transfer their rights under this Agreement, its exhibits, the Loan Documents. **Lender may transfer its rights under this Agreement or the Loan Documents to any successor-in-interest at any time, including during the Forbearance Period.**

19. **Further Default**. Except with respect to the Loan Defaults identified in the Forbearance Agreement, the failure of any Borrower or Guarantor to comply with any provision of this Agreement or with the terms and conditions of the Loan Documents (other than the Loan Defaults) after the date of this Agreement shall constitute an Event of Default and shall entitle Lender to exercise any and all of its rights and remedies under the Loan Documents and this Agreement.

20. **No Waiver**. No failure to exercise, and no delay in exercising any right, power or remedy hereunder or under any of the Loan Documents shall impair any right, power or remedy that Lender may have, nor shall such delay be construed to be a waiver of any of such rights, powers or remedies. No waiver of any default or breach of any Borrower or Guarantor shall be a waiver of any other default or breach or of any default or breach subsequently occurring. Lender shall not be deemed to have waived any right, power, or remedy except in writing signed by an officer of Lender expressly stating that it is a waiver of the same right, power or remedy.

21. **No Consent**. Lender makes no express or implied consent to any modifications of further forbearance involving any of the matters set forth in this Agreement or any other action of Lender. Lender's execution of this Agreement shall not constitute a waiver, either express or implied, of the requirement that any modification or further forbearance of the Loan Documents shall require the express written approval of Lender.

22. **Cumulative Remedies**. The rights and remedies of Lender under this Agreement and the Loan Documents are cumulative and not exclusive of any rights or remedies that Lender would otherwise have, and may be pursued at any time and from time to time and in such order as Lender shall determine in its sole and absolute discretion.

23. **Mutual Agreement.** The Parties hereto agree that the terms and provisions of this Agreement embody their mutual intent and that such terms and provisions are not to be construed more liberally in favor, or more strictly against, any Party. This Agreement shall not be construed as if it had been prepared by one of the Parties, but rather as if it had been prepared by all of the Parties.

Modificaton to Limited Forbearance Agreement
{0002260.0192/01235849.DOCX / 3}

24. **Time is of the Essence**. Time is of the essence of this Agreement and the Loan Documents.

25. **Headings.** Sections headings are for reference only and shall not affect the interpretation or meaning of any provision of this Agreement.

26. **Further Performance**. The Parties, whenever and as often as shall be requested by Lender, shall execute, acknowledge, and deliver, or cause to be executed, acknowledged, and delivered such further instruments and documents and to do any and all things as may be reasonably requested in order to carry out the intent and purpose of this Agreement, the Loan Documents.

27. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

28. **Counterparts and Execution**. This Agreement may be executed in multiple counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute but one and the same Agreement. This Agreement shall become effective upon execution of the Agreement by all Parties. This Agreement may be executed and transmitted electronically, including by email and facsimile, and such electronic signatures and copies shall have the force and effect of an original signature.

29. **Survival**. The representations, warranties, acknowledgements, and agreements set forth herein shall survive the date of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have entered into and caused this Agreement to be executed effective as of the date first set forth above.

**"LENDER"**

DATED: July __, 2021                    Arizona Bank & Trust

By_____
Name:_____
Title:_____

**"BORROWERS"**

DATED: July __, 2021                    Fresh Acquisitions, LLC,
                                        a Delaware limited liability company

By_____
Name_____
Title_____

10

Modificaton to Limited Forbearance Agreement
{0002260.0192/01235849.DOCX / 3}

DATED: July ___, 2021        Alamo Dynamic, LLC,
a Texas limited liability company

By_____
Name_____
Title_____


DATED: July ___, 2021        FMP SA MANAGEMENT GROUP, LLC

By_____
Name_____
Title_____


**"GUARANTORS"**

DATED:  July ___, 2021        ALAMO FURR'S, LLC

By_____
Name_____
Title_____


DATED: July ___, 2021        ALAMO FURR'S II, LLC

By_____
Name_____
Title_____


DATED: July ___, 2021        ALLEN JONES

_____


DATED: July ___, 2021        LARRY HARRIS

_____


DATED: July ___, 2021        RACHEL HARRIS

_____


11

DATED: July __, 2021                    JASON KEMP

                                        _____

DATED: July __, 2021                    TARA KEMP

                                        _____

DATED: July __, 2021                    BRIAN PADILLA

                                        _____

Modificaton to Limited Forbearance Agreement
{0002260.0192/01235849.DOCX / 3}